**Eric J. Brickenstein**, OSB No. 142852
Email: eric@northcurrentlegal.com
**Mark J. Kimbrell**, OSB No. 143607
Email: mark@northcurrentlegal.com
**NORTH CURRENT LEGAL LLC**
1050 SW 6th Avenue, Suite 1414
Portland, Oregon 97204
Phone: (503) 489-9020

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
(Eugene Division)

| | |
|---|---|
| **NEWPORT FISHERMEN'S WIVES, INC.,** an Oregon nonprofit corporation and **LINCOLN COUNTY,** a political subdivision of the State of Oregon, <br><br>  Plaintiffs, <br>  v. <br><br> **UNITED STATES COAST GUARD**, an agency of the United States Department of Homeland Security, and **KRISTI NOEM** in her official capacity as the Secretary of Homeland Security <br><br>  Defendants. | Case No. <br><br><br> **COMPLAINT** <br><br> **Action for Declaratory and Injunctive Relief (28 U.S.C. §§ 1331, 2201, 2202)** |

## INTRODUCTION

1.  This case is about an immediate, escalating maritime safety emergency. Specifically, it is about the federal government's sudden and surreptitious removal of an emergency rescue helicopter and related personnel and infrastructure from the Coast Guard's Newport Air Facility in violation of 14 U.S.C. § 912. With the beginning of Oregon's Dungeness crab season imminent, failure to immediately return the rescue helicopter and restore Newport Air Facility's operational capacity will place the lives of commercial fishermen departing out of

PAGE 1 -- CERTIFICATE OF SERVICE

Newport in grave danger. For the second time in less than 15 years, Newport Fishermen's Wives, Inc. and Lincoln County respectfully ask that this Court intervene to protect their loved ones and constituents from the imminent threat of avoidable tragedy.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1346 (United States as defendant); 28 U.S.C. § 2201 (declaratory relief); 28 U.S.C. § 2202 (injunctive relief); and 5 U.S.C. §§ 701-06 (judicial review of final agency actions for which there is no other adequate remedy in a court).

3. Venue in this district is proper under 28 U.S.C. § 1391, because defendant conducts operations in this district and a substantial part of the events giving rise to plaintiff's claims occurred within this district.

## PARTIES

4. Plaintiff Newport Fishermen's Wives, Inc. ("NFW") is a federally registered 501(c)(3) charity and an Oregon non-profit corporation with its principal office located in Newport, Oregon. NFW's mission is "for the purpose of voluntarily aiding and assisting families, relatives, or dependents of commercial fishermen or deceased commercial fishermen." Many of NFW's members, including declarant Taunette Dixon, are immediate family members of fishermen who participate in the Dungeness crab fishery and expect to cross the Yaquina Bay bar to set their gear on or about December 13. Additionally, multiple NFW members or their immediate family members own or work on Dungeness crab fishing vessels themselves. Said simply, NFW members and their immediate family members participate directly in Oregon's Dungeness crab fishery off the coast of Newport, Oregon.

5.      Plaintiff Lincoln County is a political subdivision of the State of Oregon. Lincoln County's first response capabilities and its ability to govern and ensure the safety of its constituents is directly harmed by closure of the Newport Air Facility. Additionally, the closure will have a significant effect of Lincoln County's local economy and associated tax revenue.

6.      Defendant United States Coast Guard is an agency of the United States Department of Homeland Security that conducts continuous and ongoing operations within the State of Oregon.

7.      Defendant Kristi Noem is the Secretary of the Department Homeland Security, acting in her official capacity.

## BACKGROUND ALLEGATIONS

8.      Newport, Oregon is a fishing town. It serves as the home port for over 250 commercial vessels, which represents the single largest concentration of fishing vessels on the Oregon Coast.

9.      Each year, the men and women of Oregon's commercial fishing fleet depart from Yaquina Bay, across the bar, to the open Pacific Ocean to harvest Oregon's flagship natural resource: Dungeness crab. The Dungeness crab fishery is the single largest sector of Newport's fisheries income, supporting approximately 7,400 family wage jobs contributing directly and indirectly approximately $346 million annually to the economy.

10.     The Dungeness crab fishery is also widely recognized as the most dangerous commercial fishery in the continental United States. In fact, between 2000 and 2006 the Northwest Dungeness Crab fishery (which includes Newport) had a higher fatality rate than Alaska's notorious Bering Sea crab fishery. Dungeness crab season typically begins in

December, when maritime conditions along Oregon's coast are often treacherous. Large swells and high wind events are common. The Yaquina Bay bar is notorious for powerful, unpredictable waves and currents that can easily capsize even a structurally sound and well-crewed vessel.

11. The waters off Oregon's coast are very cold, with an average temperature of approximately 50 to 54°F. In the event of a capsized vessel or person overboard, every second of response time is critical; every moment can be the difference between life and death. Cold shock in these waters begins within about one to three minutes, causing an inability to control breathing. Within 10 minutes, a person begins losing meaningful movement before cold water incapacitation. Without a floatation device, anything more than 10 minutes in the water is likely a death sentence. With a floatation device, survival beyond one hour is doubtful.

12. Between 2000 and 2019, 44 commercial fishermen have perished in the waters off Oregon, including 12 off the coast of Newport. NFW supports the bereaved families of lost local fishermen, advocating for their legacy and for the safety of the men and women who continue to fish the waters off the coast of Newport each season.

13. Although accidents at sea can never be completely eliminated, mortal risk and loss of life can be reduced through rapid emergency response. In that regard, the United States Coast Guard has operated an air facility with helicopter capacity in Newport since 1987.

14. Newport Air Facility was established in response to the loss of three Newport fishermen in 1985 who perished 20 miles offshore when the fishing vessel Lasseigne capsized. By the time rescue helicopters from Astoria and North Bend reached the scene one hour and fourteen minutes after the vessel's distress call, two bodies with life jackets were seen floating in the sea. A third fisherman who appeared to be alive was retrieved from the ocean and flown to a

hospital in Lincoln City, where he died of hypothermia despite extraordinary efforts to revive him.

15. In response to the tragic Lasseigne incident and others, NFW led the fight on behalf of the larger Newport community to secure a rapid response Coast Guard rescue helicopter for Oregon's central coast. On July 3, 1986, President Ronald Reagan signed legislation appropriating the funds for the Coast Guard's Newport Air Facility. A temporary facility was established in 1987 on property leased by the City of Newport to the Coast Guard. The Coast Guard constructed a building on the site and installed fuel tanks. In 1992, Congress approved funding for a permanent air facility which was formally dedicated on January 20, 1994. This important air rescue facility has operated in Newport for nearly 40 years. Since the establishment of the Newport Air Facility in 1987, there has been no change in the Coast Guard's search and rescue capability by aircraft or vessel that has lowered the deployment time for air rescue helicopters from either Astoria or North Bend to waters offshore of Newport.

16. On October 2, 2014, the U.S. Coast Guard under the Obama Administration notified stakeholders in the Newport area of its decision to close the Newport Air Facility effective November 30, 2014. That action would have stripped Newport and its fishing community of the critical safety infrastructure provided by the rescue helicopter and its crew, placing countless lives at immediate risk.

17. On November 25, 2014, NFW and Lincoln County, joined by the City of Newport and the Port of Newport, filed suit in this Court for declaratory and injunctive relief for violations of the Administrative Procedures Act, the National Environmental Policy Act, and the Homeland Security Act. Contemporaneous with the filing of the complaint, plaintiffs moved for

Page 5 – COMPLAINT

a preliminary injunction. The case number of that action, *Newport Fishermen's Wives, Inc. et al. v. United States Coast Guard*, is 6:14-cv-01890-MC (hereinafter, "NFW I").

18. While NFW I was pending, the Howard Coble Coast Guard and Maritime Transportation Act of 2014 was signed into law by the President. The Act prohibited the closure of the Newport Air Facility until January 1, 2016. The United States moved to dismiss NFW I on mootness grounds, and the Court agreed. In its opinion granting dismissal, the Court explained that "[i]f, at a later time, defendant reengages in allegedly wrongful behavior, plaintiffs may seek to enjoin such behavior at that time." (emphasis in original).

19. Although the Howard Coble Coast Guard and Maritime Transportation Act of 2014's complete bar against the removal of Newport Air Facility has sunseted, 14 U.S.C. § 912 continues to provide robust protections against the sudden, capricious closure of Coast Guard air facilities. As discussed more fully below, that statute requires, among other things, notice to Congress "[p]rior to closure, cessation of operations, or any significant reduction in personnel and use of a Coast Guard air facility that is in operation on or after December 31, 2017."

20. Following the enactment of the Howard Coble Coast Guard and Maritime Transportation Act of 2014 and the dismissal of NFW I, the Newport Air Facility continued operations without interruption for a decade. During that time, Newport's rescue helicopter was responsible for the rescue of approximately 500 people, including approximately 30 commercial fishermen whose lives were saved at sea. To cite just one example, in June 2020, the Newport Air Facility helicopter rescued seven people including three adults and four children from rocks near Yaquina Head. There is no question that had the rescue helicopter been removed

approximately 70 miles to the south to North Bend or approximately 95 miles to the North to Astoria, many of those saved would have died because of the delayed response time.

21.     In the fall of 2025, NFW learned that the U.S. Coast Guard has, upon information and belief, either entirely ceased or, at minimum, dramatically reduced operations at Newport Air Facility and is in the process of permanently closing the facility and removing associated infrastructure. Specifically, upon information and belief, the rescue helicopter that previously served the Newport Air Facility is now stationed at North Bend some 70 miles to the south, while infrastructure necessary to Coast Guard operations and rescue flight capabilities at the Newport Air Facility either have been or are being removed.

22.     Upon information and belief, the U.S. Coast Guard removed the rescue helicopter and associated critical infrastructure in furtherance of the closure of the Newport Air Facility without required findings by the Secretary, and without required notice to the public or Congress. In recent days, NFW has repeatedly reached out to the U.S. Coast Guard for information regarding the closure but has received no substantive response. This represents an unprecedented departure from historical practice, wherein the Coast Guard and local community have kept close and open lines of communication.

23.     In addition to hosting Oregon's largest concentration of commercial fishing vessels, Newport, Oregon and Oregon's central coast are centers of recreational activity on Oregon's beaches and on ocean utilizing boats of all sizes. None of the jurisdictions in Lincoln County has any helicopter rescue capability, leaving the longstanding Newport Air Facility as a critically important component of the emergency response plans of these jurisdictions. In fact, the Coast Guard's air rescue capability in Newport puts first responders throughout Oregon's

Page 7 – COMPLAINT

central coast in a position to move more aggressively with their own limited equipment in search and rescue situations knowing that the Coast Guard air rescue capability provides essential safety back-up for these first responders.

24.     The abrupt removal of the rescue helicopter and related critical safety infrastructure from the Newport Air Facility puts lives in danger. In cold water emergencies, response time determines survival. Oregon coastal waters average 50 to 54°F year-round. At these temperatures, cold shock can cause drowning within one to three minutes of immersion, and loss of meaningful movement occurs within 10 minutes. Hypothermia-induced unconsciousness typically occurs within one hour.

25.     Removal of Newport's rescue helicopter to North Bend transforms response times from around 15 to 30 minutes (Newport) to around 60 to 90 minutes (North Bend) for most commercial fishing grounds between Florence and Lincoln City. This additional 45 to 60 minutes of response time often means the difference between life and death in cold water emergencies where survival windows are measured in minutes, not hours.

26.     Furthermore, the Astoria and North Bend Coast Guard stations cannot provide adequate coverage when simultaneously responding to emergencies in their own primary service areas. When the Coos Bay helicopter is deployed to a medical evacuation in Coos County or the Astoria helicopter is responding to a Columbia River bar emergency, Newport's fishing fleet has, as a practical matter, no helicopter coverage at all. The Coast Guard's own 2014 analysis recognized this problem, which is why the Newport Air Facility was protected in the first place.

27.     In 50 to 54°F water where cold shock can cause drowning within one to three minutes and muscle failure occurs within 10 minutes, the additional response time created by the

central coast in a position to move more aggressively with their own limited equipment in search and rescue situations knowing that the Coast Guard air rescue capability provides essential safety back-up for these first responders.

24.     The abrupt removal of the rescue helicopter and related critical safety infrastructure from the Newport Air Facility puts lives in danger. In cold water emergencies, response time determines survival. Oregon coastal waters average 50 to 54°F year-round. At these temperatures, cold shock can cause drowning within one to three minutes of immersion, and loss of meaningful movement occurs within 10 minutes. Hypothermia-induced unconsciousness typically occurs within one hour.

25.     Removal of Newport's rescue helicopter to North Bend transforms response times from around 15 to 30 minutes (Newport) to around 60 to 90 minutes (North Bend) for most commercial fishing grounds between Florence and Lincoln City. This additional 45 to 60 minutes of response time often means the difference between life and death in cold water emergencies where survival windows are measured in minutes, not hours.

26.     Furthermore, the Astoria and North Bend Coast Guard stations cannot provide adequate coverage when simultaneously responding to emergencies in their own primary service areas. When the Coos Bay helicopter is deployed to a medical evacuation in Coos County or the Astoria helicopter is responding to a Columbia River bar emergency, Newport's fishing fleet has, as a practical matter, no helicopter coverage at all. The Coast Guard's own 2014 analysis recognized this problem, which is why the Newport Air Facility was protected in the first place.

27.     In 50 to 54°F water where cold shock can cause drowning within one to three minutes and muscle failure occurs within 10 minutes, the additional response time created by the

Coast Guard's illegal closure of the Newport Air Facility will inevitably mean the difference between life and death in mayday events.

28. The mortal threat caused by the Coast Guard's closure of Newport Air Facility is set to escalate dramatically on December 13, when the Newport fleet will depart to set its gear in advance of the December 15 opening of Dungeness crab season. It is imperative that this Court temporarily, preliminarily, and permanently enjoin the Coast Guard from the elimination or reduction of air rescue capabilities at the Newport Air Facility before that critical date, and to preserve the status quo that has prevailed there for nearly four decades.

## FIRST CLAIM FOR RELIEF
### (Violation of 14 U.S.C. § 912 and 5 U.S.C. § 706(2))

29. Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through 28.

30. Beginning on January 1, 2018, the Secretary of Homeland Security may not close a Coast Guard air facility except in accordance with 14 U.S.C. § 912.

31. 14 U.S.C. § 912(a)(2) states:

> Determinations. - The Secretary may not propose closing or terminating operations at a Coast Guard air facility unless the Secretary determines that-
>
> (A) remaining search and rescue capabilities maintain the safety of the maritime public in the area of the air facility;
>
> (B) regional or local prevailing weather and marine conditions, including water temperatures or unusual tide and current conditions, do not require continued operation of the air facility; and
>
> (C) Coast Guard search and rescue standards related to search and response times are met.

32. 14 U.S.C. § 912(a)(3) states:

> Public notice and comment.-

(A) In general. - Prior to closing an air facility, the Secretary shall provide opportunities for public comment, including the convening of public meetings in communities in the area of responsibility of the air facility with regard to the proposed closure or cessation of operations at the air facility.

(B) Public meetings. - Prior to convening a public meeting under subparagraph (A), the Secretary shall notify each congressional office representing any portion of the area of responsibility of the air station that is the subject to such public meeting of the schedule and location of such public meeting.

33.     14 U.S.C. § 912(a)(4) states:

Notice to congress. - Prior to closure, cessation of operations, or any significant reduction in personnel and use of a Coast Guard air facility that is in operation on or after December 31, 2017, the Secretary shall-

(A) submit to the Congress a proposal for such closure, cessation, or reduction in operations along with the budget of the President submitted to Congress under section 1105(a) of title 31 that includes-

(i) a discussion of the determination made by the Secretary pursuant to paragraph (2); and

(ii) a report summarizing the public comments received by the Secretary under paragraph (3)

(B) not later than 7 days after the date a proposal for an air facility is submitted pursuant to subparagraph (A), provide written notice of such proposal to each of the following:

(i) Each member of the House of Representatives who represents a district in which the air facility is located.

(ii) Each member of the Senate who represents a State in which the air facility is located.

(iii) Each member of the House of Representatives who represents a district in which assets of the air facility conduct search and rescue operations.

(iv) Each member of the Senate who represents a State in which assets of the air facility conduct search and rescue operations.

(v) The Committee on Appropriations of the House of Representatives.

(vi) The Committee on Transportation and Infrastructure of the House of Representatives.

(vii) The Committee on Appropriations of the Senate.

(viii) The Committee on Commerce, Science, and Transportation of the Senate.

34. 14 U.S.C. § 912(a)(5) states:

> Congressional review. - The Secretary may not close, cease operations, or significantly reduce personnel and use of a Coast Guard air facility for which a written notice is provided under paragraph (4)(A) until a period of 18 months beginning on the date on which such notice is provided has elapsed.

35. As alleged herein, the Coast Guard's relocation of the rescue helicopter and related removal of infrastructure and personnel amounts to the closure, cessation of operations, and/or significant reduction of personnel at the Newport Air Facility.

36. As alleged herein, the Coast Guard's conduct violates 14 U.S.C. § 912 in the following particulars:

(a) Failing to make any of the determinations required by 14 U.S.C. § 912(a)(2)A-C.

(b) Failing to provide opportunities for public comment, including the convening of public meetings in communities in the area of responsibility of the air facility with regard to the proposed closure or cessation of operations at the air facility, in violation of 14 U.S.C. § 912(a)(3)A.

(c) Failing to notify each congressional office representing any portion of the area of responsibility of the air station that is the subject to such public meeting of the schedule and location of such public meeting, in violation of 14 U.S.C. § 912(a)(3)B.

(d) Failing to submit a proposal to Congress in violation of 14 U.S.C. § 912(a)(4)A.

(e) Failing to provide notice to specified congressional representatives and committees as required by 14 U.S.C. § 912(a)(4)B.

(f) Closing, ceasing operations, and/or significantly reducing personnel and use of a Coast Guard air facility less than 18 months after the provision of the written notice required under paragraph (4)(A), in violation of 14 U.S.C. § 912(5).

37. The Coast Guard's actions alleged herein constitute final agency action subject to this court's review. 5 U.S.C. §§ 551(13), 704. They are not in accordance with law, without observation of the procedures required by law, and are arbitrary and capricious within the meaning of the Administrative Procedure Act (APA). 5 U.S.C. § 706(2)(A). The actions were

**Page 11 – COMPLAINT**

also made "in excess of statutory jurisdiction, authority, or limitation" and "without observance of procedure required by law." 5 U.S.C. § 706(2)(C) and (D).

38. If the status quo that has prevailed since 1987 is not immediately restored by the return of the rescue helicopter and restoration of operations at the Newport Air Facility, irreparable harm will result in the form of the near certain loss of human life in areas offshore of the central Oregon coast in the near term during the winter of 2025-2026, and the certain loss of life in this area over the long term. Due to their direct participation and relationship with commercial crabbing industry in Newport, Oregon, plaintiffs will endure that irreparable harm.

39. Plaintiffs have no adequate remedy at law and require temporary, preliminary and permanent injunctive relief to prevent the loss of the Newport Air Facility and its search and rescue capability.

40. Defendant should be temporarily, preliminarily and permanently enjoined from closing the Coast Guard air facility in Newport, Oregon and from discontinuing or materially reducing the agency's air rescue service performed by that facility.

41. Plaintiff is entitled to its reasonable attorney's fees, costs and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

## SECOND CLAIM FOR RELIEF
**(Violation of Administrative Procedure Act 5 U.S.C. § 706(1))**

42. Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through 28.

43. Under the Administrative Procedure Act ("APA"), an agency must conclude matters presented to it within a reasonable time. 5 U.S.C. § 555(b).

44.     The APA further requires a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

45.     Pursuant to 14 U.S.C. § 912, prior to closing or terminating operations at a Coast Guard air facility—as defendant has done with respect to the Newport Air Facility—defendant has a mandatory, nondiscretionary duty to undertake the actions set forth in 14 U.S.C. § 912(2)-(5).

46.     Defendant has failed to take the actions required by 14 U.S.C. § 912(2)-(5) and has either: (a) unlawfully withheld the action entirely, or (b) unreasonably delayed taking the action.

47.     Pursuant to 6 U.S.C. § 468, prior to substantially and significantly reducing the search and rescue mission of the Coast Guard—as defendant has done here—Congress must issue a declaration and certification "that a clear, compelling and immediate need exists" to waive the Secretary's obligation to preserve the Coast Guard's mission, as well as a detailed justification for that waiver that includes reasons and specific information demonstrating "that the nation and the Coast Guard cannot respond effectively if the restrictions" are not waived.

48.     Defendant has failed to take the required action of receiving said declaration and certification from Congress and has either (a) unlawfully withheld the action entirely, or (b) unreasonably delayed taking the action.

49.     Defendant's failure to take the discrete, mandatory action required under 6 U.S.C. § 468 and 14 U.S.C. § 912 constitutes final agency action subject to this Court's review. 5 U.S.C. §§ 551(13), 704.

///

WHEREFORE, plaintiffs pray for the following relief from this Court:

1.      Declare that defendants have violated 14 U.S.C. § 912 and the Administrative Procedures Act, 5 U.S.C. § 706, as alleged in this Complaint;

2.      Enjoin the defendants from taking any action to close the Newport Air Facility or to discontinue or materially reduce air rescue services deployed from that facility;

3.      Restore the status quo ante of a fully operational Newport Air Facility, including but not limited to the presence of a rescue helicopter related full operational capacity and personnel.

3.      Award plaintiffs their reasonable attorney fees, costs and expenses under the Equal Access to Justice Act; and

4.      Grant plaintiffs any further relief that the Court deems just and equitable.

DATED this 21st day of November, 2025.

/s/ Eric J. Brickenstein
**Eric J. Brickenstein**, OSB No. 142852
Email: eric@northcurrentlegal.com
**Mark J. Kimbrell**, OSB No. 143607
Email: mark@northcurrentlegal.com
**NORTH CURRENT LEGAL LLC**
1050 SW 6th Avenue, Suite 1414
Portland, Oregon 97204
Phone: (503) 489-9020

Attorneys for Plaintiffs