DAN RAYFIELD
Attorney General
BRIAN SIMMONDS MARSHALL #196129
NINA ENGLANDER #106119
Senior Assistant Attorneys General
DEREK OLSON #225504
Assistant Attorney General
Trial Attorneys
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: 971-673-1880
Fax: 971-673-5000
Email: Brian.S.Marshall@doj.oregon.gov
        Nina.Englander@doj.oregon.gov
        Derek.Olson@doj.oregon.gov

Attorneys for Plaintiff, State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NEWPORT FISHERMEN'S WIVES, INC., an Oregon nonprofit corporation, and LINCOLN COUNTY,  a political subdivision of the State of Oregon,<br><br>             Plaintiffs,<br><br>    v.<br><br>UNITED STATES COAST GUARD, an agency of the United States Department of Homeland Security, and KRISTI NOEM in her official capacity as the Secretary of Homeland Security,<br><br>             Defendants. | Case No. 6:25-cv-02165-AA (Leading Case)<br><br>PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION<br><br>Consolidated with:<br>*State of Oregon v. Noem, et al.*<br>No. 6:25-cv-02172-AA (Trailing Case) |

PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

I.    INTRODUCTION .............................................................................................. 1

II.   SUMMARY OF THE FACTUAL RECORD ................................................... 2

III.  ARGUMENT ..................................................................................................... 4

A.    Plaintiffs Are Likely to Succeed on the Merits.................................... 5

1.    Plaintiffs Have Standing to Bring Their Claims. ...................... 5

2.    Ceasing Forward Deployment of the Rescue Helicopter Constitutes
Final Agency Action Reviewable under the APA. ..................... 8

3.    Defendants Violated 14 U.S.C. § 912..................................... 10

4.    Defendants' Actions Are Arbitrary and Capricious................ 12

5.    Defendants Violated the Coastal Zone Management Act........ 14

B.    Without a Preliminary Injunction Plaintiffs Will Suffer Irreparable Harm.......... 15

C.    The Balance of Equities and Public Interest Weigh in Favor of Injunctive
Relief................................................................................................ 17

D.    This Court Should Exercise Its Discretion to Deny Defendants' Request
for a Bond. ....................................................................................... 18

IV.   CONCLUSION ................................................................................................ 19

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ............................................................................. 8

*Bennett v. Spear*,
  520 U.S. 154 (1997) ........................................................................... 8

*Fla. Audubon Soc. v. Bentsen*,
  94 F.3d 658 (D.D.C. 1996) ................................................................ 7

*Just Film, Inc. v. Merchant Services, Inc.*,
  474 F. App'x 493 (9th Cir. 2012) .................................................... 18

*Karuk Tribe of California v. U.S. Forest Service*,
  681 F.3d 1006 (9th Cir. 2012) ......................................................... 14

*Krottner v. Starbucks Corp.*,
  628 F.3d 1139 (9th Cir. 2010) ..................................................... 5, 7

*Kuklachev v. Gelfman*,
  629 F. Supp. 2d 236 (E.D.N.Y. 2008) ............................................ 16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................... 6

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ........................................................... 16

*Massachusetts v. Env't Prot. Agency*,
  549 U.S. 497 (2007) ........................................................................... 6

*Murphy Co. v. Biden*,
  65 F.4th 1122 (9th Cir. 2023) ........................................................... 9

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*,
  567 F.3d 521 (9th Cir. 2009) ............................................................. 5

*Nat'l Coal. on Black Civic Participation v. Wohl*,
  498 F. Supp. 3d 457 (S.D.N.Y. 2020) ............................................. 16

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
  465 F.3d 977 (9th Cir. 2006) ............................................................. 9

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

*R.I.L-R v. Johnson,*
  80 F. Supp. 3d 164 (D.D.C. 2015) .................................................................. 17

*Sackett v. E.P.A.,*
  566 U.S. 120 (2012).......................................................................................... 9

*Sierra Club v. Morton,*
  405 U.S. 727 (1972).......................................................................................... 6

*Summers v. Earth Island,*
  555 U.S. 488 (2009)....................................................................................... 6, 7

*Townley v. Miller,*
  722 F.3d 1128 (9th Cir. 2013) .......................................................................... 5

*United States v. Laerdal Mfg. Corp.,*
  73 F.3d 852 (9th Cir. 1995) ............................................................................ 15

## STATUTES, RULES, AND REGULATIONS

6 U.S.C. § 486(a) ..................................................................................................... 11

14 U.S.C. § 912........................................................................................... *passim*

15 C.F.R. § 930.34(a)(1)......................................................................................... 14

## OTHER AUTHORITIES

*Commercial crab season delayed*, Or. Dep't of Fish & Wildlife Newsroom (Nov. 21,
  2025), https://myodfw.com/news/commercial-crab-season-delayed................................ 16

Page iii -  PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR
            PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

# I.    INTRODUCTION

In 2016, Congress enacted a statute requiring the Coast Guard to provide notice 18 months "[p]rior to closure, cessation of operations, or any significant reduction in personnel and use of a Coast Guard air facility . . . ." 14 U.S.C. § 912(a)(4) (requiring notice to Congress); *see also id.* § 912(a)(5) (imposing 18-month notice period). From 2016 and until April of 2021, a search and rescue helicopter and its four-member crew were "forward deployed," meaning that a helicopter stationed at Air Station ("AIRSTA") North Bend was physically located at Air Facility Newport ("AIRFAC Newport") 365 days per year, and thus available to launch missions from AIRFAC Newport. That changed in 2021: in the summer months from 2021 to 2024, without notice to Congress, the helicopter and its crew were no longer forward deployed to Newport and service was reduced to weekends only. That approach changed again this year: from May 4 until this Court's temporary restraining order (TRO) was entered on November 25, no helicopter was regularly deployed at all—again, with no notice to Congress.

That reassignment constitutes a cessation of operations and a significant reduction in personnel and use of AIRFAC Newport. Contrary to Defendants' position, this is not merely a "reasonable management efficienc[y] . . . such as modifying the operational posture of units," § 912(b), that is excepted from the Congressional notice requirements. And that exception does not apply for a second reason: Defendants reassigned a rescue helicopter ordinarily deployed to AIRFAC Newport not "to ensure the safety of the maritime public nationwide" as the statutory exception requires, *id.*, but to conduct immigration enforcement at the Southwest border. Because Defendants did not satisfy the procedural requirements of 14 U.S.C. § 912 before reassigning the rescue helicopter, Defendants' actions are contrary to law in violation of the Administrative Procedure Act (APA).

Defendants' contrary arguments are unavailing. Plaintiffs have standing and Defendants' October memorandum constitutes final agency action that is reviewable under the APA.

Page 1 -    PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Defendants repeatedly suggest that Coast Guard officials had "authorization" or "permission" to reallocate resources away from AIRFAC Newport. They did not. Congress created specific statutory prerequisites in response to the Coast Guard's prior efforts to reduce the resources at Newport, which Defendants have disregarded.

Defendants also argue that this Court should not issue a preliminary injunction, trusting that the Coast Guard's voluntary cessation of its illegal conduct suffices to protect Plaintiffs from irreparable injury. Defendants' belated assurances do not forestall a preliminary injunction. The Coast Guard made a formal, documented decision to indefinitely suspend operations at Newport. Olson Suppl. Decl. Att. 4 at 5 (ECF 44-4). No post-hoc declaration can override this order issued within the Coast Guard's chain of command. Even after this lawsuit was filed, a Coast Guard representative confirmed the decision to a United States Senator and local and state leaders. Only after this Court entered a TRO did the Coast Guard contend that it had changed its plans. This Court need not yield its jurisdiction to such gamesmanship.

For the reasons discussed below and in Plaintiffs' motions, this Court should grant Plaintiffs' motion for a preliminary injunction.

## II.    SUMMARY OF THE FACTUAL RECORD[1]

When NFW filed their lawsuit in 2014, "AIRSTA North Bend flew an MH-65 helicopter to AIRFAC Newport daily in order to maintain a B-0 readiness status year round."[2] Reinhold Decl. ¶ 25 (ECF 46). That changed on August 21, 2019, when "AIRSTA North Bend requested and received permission to switch the readiness status of the AIRFAC Newport from B-0 to B-

---

[1] Defendants have noted in their response that the State's brief incorrectly cited Captain Reinhold's deposition testimony. Defs'. Resp. to Pls.' Mot. for Prelim. Inj. ("Resp.") at 5 n.6 (ECF 45). Counsel for the State regrets that error and acknowledges that Captain Reinhold testified that between the months of October through March from 2021 through 2024, AIRFAC Newport's rescue helicopter maintained a B-1, not B-0, operational posture. See Olson Suppl. Decl. Att. 3 ("Reinhold Dep.") at 17:19–18:2 (ECF 44-3).

[2] B-0 status indicates that the helicopter and crew are on standby to launch within thirty minutes of notification of a distress situation. Reinhold Dep. 18:6–11 (ECF 44-3).

Page 2 -    PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR
            PRELIMINARY INJUNCTION

1."[3] *Id.* The Coast Guard maintained that 24-hour, seven day a week B-1 operational status until April 24, 2021, when a helicopter and crew were located at AIRFAC Newport only on weekends.[4] On September 9, 2021, AIRFAC Newport returned to B-1 operational status seven days a week. *Id.* ¶ 26; *see also* Reinhold Dep. 15:18–22 (ECF 44-3) ("they went back to full time status 24/7 in the – in the fall, and into Dungeness crab season").[5]

In 2022, AIRFAC Newport operated only on weekends from June through the end of September. *See* Reinhold Decl. ¶ 26 ("The following year, AIRFAC Newport operated on the weekends only from 01 June through 02 October 2022[.]").

"For 2023 and 2024, AIRSTA North Bend requested and received permission to increase the operational readiness posture at AIRFAC Newport to weekends and holidays from May through September." *Id.* ¶ 28.[6]

"AIRFAC Newport began 2025 in a B-1 readiness status. AIRSTA North Bend was authorized to modify operations at AIRFAC Newport from 05 May 2025 through 30 September 2025." *Id.* ¶ 29. An October 29 memorandum requested an extension of that authorization, which was granted, extending the suspension of rescue helicopter operations from AIRFAC Newport indefinitely. Olson Suppl. Decl. Att. 4 at 5 (¶ 4) (ECF 44-4). That status continued until this Court entered its TRO on November 24, 2025. Op. & Order Granting Pls.' Mot. for TRO

---

[3] B-1 status indicates that the helicopter and crew are on standby to launch within one hour of notification of a distress situation. Reinhold Dep. 18:6–11 (ECF 44-3).

[4] From documents post-dating the 2021 change to weekends, it appears that the Coast Guard provided 48 hours of coverage from Friday at noon until Sunday at noon when providing weekend coverage. *See* Reinhold Decl. Ex. 4 at 1 (¶ 1) (ECF 46-4) (May 2023 email from Rear Admiral Bouboulis providing that "I concur with the optimization plan outlined in reference (a) to staff Air Facility Newport with a B-1 during weekends from Fridays at noon to Sundays at noon, and on federal holidays."); *id.* Ex. 5 at 1, 3 (ECF 46-5) (April 2024 emails between Captain Conley and Commander Kircher, granting request to downgrade AIRFAC Newport's operational posture to "every weekend (oncoming Friday, off-going Sunday)" and "Federal Holiday weekends" from May 13 until October 1, confirming that the Admiral is "fine with continuing what we've done in the past").

[5] *Supra* note 4.

[6] Federal holidays are listed on the U.S. Office of Personnel Management's website, https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Historical-Data.

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

("TRO") (ECF 15). In sum, from May 5, 2025, until this Court ordered the return of AIRFAC Newport's rescue helicopter on November 24, 2025, there were *no* days on which Defendants deployed a rescue helicopter to AIRFAC Newport. *Id.; see also* Olson Suppl. Decl. Att. 4 at 5 (ECF 44-4).

| AIRFAC Newport Status, Staffing, and Coverage | | | | | |
|---|---|---|---|---|---|
| Year | Status | Period | Helicopter Days Assigned | | |
| | | | Per Week | Per Period | Total |
| 2014 – 2018 | B-0 | Year Round | 7 | 365 | 365 |
| 2019 | B-0 | Jan. 1 – Aug. 21 | 7 | 233 | 365 |
| | B-1 | Aug. 22 – Dec. 31 | 7 | 132 | |
| 2020 | B-1 | Year Round | 7 | 365 | 365 |
| 2021 | B-1 | Jan. 1 – Apr. 23 | 7 | 113 | 266 |
| | | Apr. 24– Sep. 9 | ~2 | 40 | |
| | | Sep. 10 – Dec. 31 | 7 | 113 | |
| 2022 | B-1 | Jan. 1 – May 31 | 7 | 151 | 277 |
| | | June 1 – Oct. 2 | ~2 | 36 | |
| | | Oct. 3 – Dec. 31 | 7 | 90 | |
| 2023 | B-1 | Jan. 1 – Apr. 30 | 7 | 120 | 259 |
| | | May 1 – Sep. 30 | ~2 + Fed. Holidays | 47 | |
| | | Oct. 1 – Dec. 31 | 7 | 92 | |
| 2024 | B-1 | Jan. 1 – Apr. 30 | 7 | 121 | 261 |
| | | May 1 – Sep. 30 | ~2 + Fed. Holidays | 48 | |
| | | Oct. 1 – Dec. 31 | 7 | 92 | |
| 2025 | B-1 | Jan. 1 – May 4 | 7 | 124 | 124 |

### III.     ARGUMENT

This Court should grant Plaintiffs' motion for a preliminary injunction.

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

A.    **Plaintiffs Are Likely to Succeed on the Merits.**

Plaintiffs are likely to succeed on the merits of their claims. Although Defendants argue

that they had "authorization" to cease forward deploying AIRFAC Newport's rescue helicopter,

that authorization was contrary to 14 U.S.C. § 912 and the Coastal Zone Management Act and

arbitrary and capricious. Defendants assert that AIRFAC Newport is redundant to AIRSTA

North Bend and AIRSTA Astoria, but until and unless Defendants successfully lobby for a

statutory change to § 912, it is Congress, not Defendants, who are empowered to determine when

the Coast Guard may cease search and rescue operations or significantly reduce personnel and

use of a Coast Guard Air Station.

1.    **Plaintiffs Have Standing to Bring Their Claims.**

Plaintiffs have standing. The State alone has standing for three reasons.[7] First,

Defendants' reassignment of the rescue helicopter has created a "substantial risk" that Plaintiffs'

members or employees will suffer significant injury or death if those members or employees are

immersed in Oregon's coastal waters. *See* State's Mot. for Prelim. Inj. ("Mot.") at 13 (ECF 42)

(theft of laptop from employer was an injury sufficient to confer standing to employees whose

personal information was stored on that laptop because employees had "alleged a credible threat

of real and immediate harm stemming from the theft of a laptop containing their unencrypted

personal data" (quoting *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010)).

Second, ceasing operations or significantly reducing personnel and use of AIRFAC Newport

decreases tangible support for the operations of Oregon Department of Fish and Wildlife

(ODFW) and Oregon State University (OSU). Olson Suppl. Decl. Att. 1 (Defs.' Resp. to Pls.'

First Set of Interrogs.) at 9–10 (ECF 44-1). And third, Plaintiffs have suffered a concrete and

particularized procedural injury based on Defendants' failure to satisfy the requirements of 14

U.S.C. § 912. When Congress has "recognized a concomitant procedural right" and a state has a

---

[7] "'As a general rule, in an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing.'" *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013) (quoting *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 522 (9th Cir. 2009)).

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

"stake in protecting its quasi-sovereign interests," like its law enforcement capacity, states are "entitled to special solicitude in [the courts'] standing analysis." *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 (2007); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992) ("The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.").[8] Defendants' contrary arguments are unpersuasive.

First, Defendants cite *Sierra Club v. Morton,* 405 U.S. 727 (1972), arguing that Plaintiffs have a mere "generalized concern" regarding "how Coast Guard search and rescue operations are conducted." Resp. at 11–12 (ECF 45). The State and the Newport Fishermen's Wives have distinct standing from the public as a whole, because they are seafarers. Thus, they have a particularized interest in the Coast Guard's search and rescue operations off of Newport distinct from the public at large. In *Sierra Club*, the Court emphasized that the "alleged injury will be felt directly only by those who use Mineral King and Sequoia National Park" and that the Sierra Club had "failed to allege that it or its members would be affected in any of their activities or pastimes by" the planned action. 405 U.S. at 735. In contrast, the State has alleged that its employees *will* utilize the coast near Newport for research and law enforcement and that the State's employees rely on the rescue helicopter to ensure their safety and support their operations. Ainsworth Decl. ¶¶ 4–5, 8 (6:25-cv-02172-AA, ECF 11); Thomas Decl. ¶ 5 (6:25-cv-02172-AA, ECF 10).

Second, Defendants cite *Summers v. Earth Island*, 555 U.S. 488 (2009), to argue that although Plaintiffs may assert their members' injuries to establish standing, "Plaintiffs do not have standing to obtain relief on behalf of non-party hypothetical individuals." Resp. at 12. Although Defendants note that Plaintiffs' declarations include those of commercial fishers who are not members of NFW, those declarations provide context for the substantial risk of injury to

---

[8] Although Defendants argue that Plaintiffs have no procedural rights to a public meeting under 14 U.S.C. § 912(a)(3), Resp. at 18–19, that provision references "proposed closure or cessation of operations at the air facility."

Page 6 -  PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs' members posed by Defendants' reassignment of AIRFAC Newport's rescue helicopter. Additionally, Plaintiffs' members have submitted their own declarations. *See* Bostwick Decl. (NFW President) (ECF 9); Dixon Decl. (NFW Board member and commercial fisher) (ECF 11); Retherford Decl. (NFW member and owner of commercial fishing vessels) (ECF 40). Dixon, as a commercial fisher, and Retherford, as owner of three commercial fishing vessels, clearly have "'firm intention[s] to visit' the location at issue." Resp. at 12 (quoting *Summers*, 555 U.S. at 496).

Third, Defendants assert that Plaintiffs' alleged injuries are not traceable to Defendants' conduct because "injuries[,] death or bodily injury resulting from shipwrecks . . . are events that are wholly outside the control of the Coast Guard," Resp. at 12, and thus require "'speculative links in the chain of causation.'" *Id.* at 13 (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 670 (D.D.C. 1996)). The harm traceable to Defendants' actions is the delayed response and recovery time—which is in Defendants' control—and which the record shows causes an increased risk of hypothermia and death. This Court should reject Defendants' argument for the same reason that the Ninth Circuit has held that theft of a laptop containing sensitive personal information from an employer was sufficient to confer standing on the affected employees: Defendants' conduct has created "a credible threat of real and immediate harm" to Plaintiffs by ceasing forward deployment of AIRFAC Newport's rescue helicopter, which effectively doubled their emergency response time. *Krottner*, 628 F.3d at 1143; *see also* Mot. at 14–15 (detailing calculated response times based on testimony of Captain Kent Reinhold).

And fourth, Defendants assert that "even if AIRFAC Newport closes, which has not happened, helicopters at AIRSTA North Bend and AIRSTA Astoria are capable of reaching anywhere that a helicopter launching from AIRFAC Newport can reach within the Coast Guard's two-hour response time." Resp. at 13–14. But that assertion sidesteps Plaintiffs' argument that the increased response time from other facilities creates a substantial risk of injury due to the

Page 7 -     PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR
              PRELIMINARY INJUNCTION

increased time that Plaintiffs' members or employees would be immersed in Oregon's cold coastal waters and the commiserate increased likelihood of injury or death.

For those reasons, Defendants' arguments do not defeat Plaintiffs' standing based on the substantial risk of injury or death alleged here that surely confers standing on Plaintiffs. But aside from that injury, the State also suffers injury to its scientific operations and to prior notice *before* the Coast Guard substantially reduced operations.

Lastly, although Defendants do not argue that Plaintiffs' claims are moot because Defendants have returned the rescue helicopter to AIRFAC Newport and assert that they intend to continue operations there, Defendants' decision to return the helicopter in response to this Court's TRO does not moot Plaintiffs' claims. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (although a "case becomes moot—and therefore no longer a 'Case' or 'Controversy' for Article III purposes—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," a "defendant cannot automatically moot a case simply by ending its unlawful conduct once sued" (internal quotation marks and citation omitted)).

In sum, this Court has jurisdiction to adjudicate the merits of Plaintiffs' claims.

**2.     Ceasing Forward Deployment of the Rescue Helicopter Constitutes Final Agency Action Reviewable under the APA.**

Defendants' cessation of the forward deployment of a rescue helicopter to AIRFAC Newport constitutes final agency action that is reviewable under the APA. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (final agency action reviewable under the APA "must mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow" (citation modified)).

In a series of four memoranda, Defendants ceased search and rescue operations at AIRFAC Newport and significantly reduced its personnel and use. At a minimum, the fourth memorandum from October, which ceased the rescue helicopter's deployment to AIRFAC

Page 8 -    PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Newport indefinitely, constitutes final agency action because it marked the consummation of the agency's decision-making process on the reassignment of helicopter and legal consequences flow from that decision. *See* Olson Suppl. Decl. Att. 4 at 5 (¶ 4) (ECF 44-4) ("CGD Northwest granted [AIRSTA North Bend's] request to continue the modification . . . until sufficient aviation personnel are available to safely meet the requirements."). A U.S. Coast Guard spokesperson verified Defendants' intention to indefinitely reassign the AIRFAC Newport rescue helicopter in a meeting with U.S. Senator Ron Wyden on November 23, 2025, two days after Plaintiffs NFW and Lincoln County filed their complaint and motion for TRO. *See* McMahon Decl. ¶¶ 4–5 (6:25-cv-02172-AA, ECF 12) ("At that meeting, a Coast Guard representative, Commander Matthew Edes, confirmed that the U.S. Coast Guard relocated the helicopter to North Bend indefinitely due to staffing shortages"). Also, the "mere possibility that an agency might reconsider" its position "does not suffice to make an otherwise final agency action nonfinal." *Sackett v. E.P.A.*, 566 U.S. 120, 127 (2012).

In sum, the October memorandum marked the "final word" on Defendants' decision to indefinitely reassign the rescue helicopter, and as discussed in the State's motion for preliminary injunction, legal consequences flow from that decision because "the action . . . has a direct and immediate effect on the day-to-day operations" of Plaintiffs, their members, or their employees. *See Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) ("In determining whether an agency's action is final, [courts] look to whether the action . . . has a direct and immediate effect on the day-to-day operations of the subject party" (internal quotation marks omitted)).

If this Court concludes that the indefinite reassignment of the rescue helicopter does not constitute final agency action, this Court should nonetheless enjoin that reassignment, because the reassignment violated 14 U.S.C. § 912 and is therefore *ultra vires. See Murphy Co. v. Biden*, 65 F.4th 1122, 1129 (9th Cir. 2023) ("actions by subordinate Executive Branch officials that extend beyond delegated statutory authority—*i.e., ultra vires* actions—are reviewable").

Page 9 -   PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR
           PRELIMINARY INJUNCTION

3.    **Defendants Violated 14 U.S.C. § 912.**

Defendants' suspending deployments of helicopters to AIRFAC Newport constitutes a "cessation of operations" or "significant reduction in personnel and use of AIRFAC Newport." 14 U.S.C. § 912(a)(4).[9] Because Defendants did not provide notice to Congress, as required by § 912(a)(4), nor abide by the 18-month Congressional review period, as required by § 912(a)(5), before ceasing operations or significantly reducing personnel and use of AIRFAC Newport, Defendants violated 14 U.S.C. § 912.

There is no question that on May 5, 2025, Defendants ceased daily helicopter operations from AIRFAC Newport and thus significantly reduced personnel and use of that air facility. From October 1, 2024 to May 4, 2025, and many earlier periods, Defendants staffed AIRFAC Newport with a rescue helicopter crew nearly 24-hours a day, seven days a week. Reinhold Decl. ¶ 29 (ECF 46). But from May 5, 2025, until this Court ordered the return of AIRFAC Newport's rescue helicopter on November 24, 2025, there were *no* days on which Defendants deployed a rescue helicopter in B-1 operational status to AIRFAC Newport. *Id.; see also* Olson Suppl. Decl. Att. 4 at 5 (ECF 44-4). Accordingly, Defendants reduced the search and rescue capabilities and rescue helicopter personnel who were deployed to AIRFAC Newport by 100% for a period of nearly seven months.

Regardless of whether AIRFAC Newport's rescue helicopter crews were "stationed" at AIRFAC Newport, those crews were deployed to AIRFAC Newport on a daily basis until May 5, 2025; there were people eating, sleeping, exercising, and training from Newport on a seven-days-a-week basis—a minimum of a crew of four, plus one person who was there permanently on a daily or at least weekly basis—up until this year.  Olson Suppl. Decl. Att. 3 (Reinhold Dep.) at 11:6–13; *see also* Reinhold Decl. ¶¶ 6–7. Now it is down to just one individual who is there,

_____

[9] Senior Coast Guard officers appear to understand that the sole statutory "requirement is to have an airfac in Newport." Reinhold Decl. Ex. 5 at 1 (ECF 46-5) (April 5, 2024, Email from Captain Brian Conley). But maintaining an air facility is only one of the statutory triggers for Congressional notice. The "cessation of operations, or any significant reduction in personnel and use of a Coast Guard air facility" also requires Congressional notification, 14 U.S.C. § 912(a)(4), and an 18-month waiting period, § 912(a)(5).

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

and an occasional drop-in. Reinhold Decl. ¶¶ 6, 29. There is no question that this is a reduction in personnel and use of AIRFAC Newport.

Defendants incorrectly argue that ending helicopter deployments to AIRFAC Newport is permitted under 14 U.S.C. § 912(b). "Managing availability of finite assets and resources to support the [Coast Guard's search and rescue] mission is a complex matter," Reinhold Decl. ¶ 33, and Congress retained operational flexibility under 14 U.S.C. § 912(b). But as this Court has already explained, although "some operational flexibility is afforded to the Secretary under § 912(b)," that "operation flexibility does not, by the plain terms of § 912(a), extend to decisions which close, cease operations, or significantly reduce personnel and use of a Coast Guard air facility." TRO at 10 (ECF 15).

In any case, the § 912(b) exception does not apply because Defendants unlawfully diverted resources from search and rescue operations to immigration enforcement, rather than to ensure maritime safety. *See* 14 U.S.C. § 912(b) ("The Secretary may implement any reasonable management efficiencies within the air station and air facility network . . . as necessary to ensure the safety of the maritime public nationwide."). Although the Coast Guard has eleven statutory missions, by enacting § 912, Congress has specifically required that only maritime safety, not migrant interdiction or other statutory missions, is a permissible basis to "modify[] the operational posture of units or reallocating resources." *Id.*; *see also* 14 U.S.C. § 910(a)(1)(A) ("The Secretary may not close a Coast Guard multimission small boat station or subunit unless the Secretary . . . determines that . . . remaining search and rescue capabilities maintain the safety of the maritime public in the area of the station or subunit"); 6 U.S.C. § 468(a)(1) (Coast Guard's missions include "marine safety," "search and rescue," and "migrant interdiction"). For those reasons, Defendants' policy preference to cease rescue helicopter operations from AIRFAC Newport in favor of immigration enforcement cannot be justified under section 912(b). *See* Resp. at 15 ("Although staffing issues were overcome, the extension was required by a mission critical deployment of a helicopter and air crew to AIRSTA San Diego[.]"). Defendants cannot cease

Page 11 -  PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR
         PRELIMINARY INJUNCTION

operations or significantly reduce personnel or use of Coast Guard Air Stations by diverting search and rescue resources to police the southern border.

Lastly, the Court should reject Defendants' argument that "AIRFAC Newport provides redundant search and rescue coverage to the larger air stations located in North Bend and Astoria." Resp. at 2. This argument has no bearing on compliance with 14 U.S.C. § 912. Instead, Defendants appear to assert that because Defendants believe that search and rescue capabilities are not required at AIRFAC Newport, Defendants are not obliged to maintain operations, personnel, and use at the AIRFAC, as is required by statute. But it is Congress, not Defendants, who set the procedural prerequisites to implement such a policy. Defendants are free to seek statutory changes through Congress. But until § 912 is amended to reflect Defendants' policy preferences, Defendants are required to follow the law.

For those reasons, Plaintiffs have demonstrated a likelihood of success on their claim that Defendants temporarily ceased operations of AIRFAC Newport or significantly reduced personnel and use of that facility by reassigning the rescue helicopter to shift Coast Guard assets from search and rescue operations in Oregon to immigration enforcement in California pursuant to the October memorandum, in violation of 14 U.S.C. § 912.

### 4. Defendants' Actions Are Arbitrary and Capricious.

Defendants' actions are arbitrary and capricious. Because Plaintiffs have demonstrated a likelihood of success on their claim that there is no rational connection between the facts in the record and Defendants' decision to reassign AIRFAC Newport's rescue helicopter, this Court should enter a preliminary injunction.

Defendants' arguments to the contrary are unavailing. First, Defendants assert that "a helicopter launching from AIRFAC Newport is not immediately able to hoist and rescue persons in the water because a helicopter with a full load of fuel weighs too much to be able to hover and hoist a person. The helicopter must burn off sufficient fuel to reduce its weight (and also account for the weight of the people it will be taking aboard) or jettison fuel." Resp. at 21. Defendants

Page 12 -  PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

incorrectly argue that the only aid that a rescue helicopter can provide a person in distress is to immediately hoist them into the helicopter. *See* Olson Second Suppl. Decl. Att. 1 (Reinhold Dep.) at 112:7-10 (rescue helicopters can drop life rafts to assist individuals in the water); *see also* Reinhold Decl. ¶ 7 (ECF 46) ("The helicopter has a crew of four" including a "rescue swimmer.").

Second, Defendants argue that diverting search and rescue resources to immigration enforcement is consistent with 14 U.S.C. § 912(b). For the reasons explained in section II(A)(3), above, Defendants are incorrect. In any case, because the reassignment of AIRFAC Newport's rescue helicopter constitutes a temporary cessation of operations or significant reduction in the personnel and use of AIRFAC Newport, Defendants' argument necessarily fails. *See* TRO at 10 ("operation flexibility does not, by the plain terms of § 912(a), extend to decisions which close, cease operations, or significantly reduce personnel and use of a Coast Guard air facility.").

And third, Defendants assert that the Coast Guard's two-hour response window is consistent with Defendants' estimates that "a medium sized man or woman, wearing summer clothing, immersed in the water up to their neck at the coldest end of the annual average water temperature range, would be able to functionally assist in their rescue for just under two hours and could survive for over six hours." Resp. at 23 (citing Forbes Decl. ¶ 8 (ECF 48)). But Forbes acknowledges that her "model only provides the estimated time of survival without considerations of body characteristics, clothing, etc." Forbes Decl. ¶ 9. Thus, that model is insufficient to support Defendants' assertion that "Dr. Cyr's declaration concerning survival times in the waters off the coast of Oregon and the other anecdotal declarations submitted in support of the motion are simply wrong." Resp. at 23. Nor do Defendants contend with reported cases of overboard mariners who died of hypothermia after a mere hour in Oregon's coastal waters. *See* Olson Decl. Att. 8 ¶ 4 (6:25-cv-02172, ECF 7-8) (declaration of NFW member Ginny Goblirsch filed in 6:14-cv-01890, recounting how the crew of the Lasseigne died of hypothermia after being rescued "one hour and fourteen minutes after the distress call").

Page 13 -  PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

For those reasons, Defendants' arguments do not defeat Plaintiffs' claim that Defendants' actions are arbitrary and capricious.

**5.      Defendants Violated the Coastal Zone Management Act.**

Defendants violated the Coastal Zone Management Act (CZMA) because they failed to provide a consistency determination before reassigning AIRFAC Newport's rescue helicopter.

Defendants assert that they were not required to provide a consistency determination because reassignment of the helicopter "is not a 'Federal agency activit[y] affecting any coastal use or resource.'" Resp. at 25 (quoting 15 C.F.R. § 930.34(a)(1)). Defendants are incorrect.

As discussed in the State's motion for preliminary injunction, Lincoln County, NFW and their members, state agencies, and the public rely on the AIRFAC Newport rescue helicopter while recreating, researching, fishing, and conducting law enforcement. Ceasing operations from AIRFAC Newport decreases tangible support for OSU and ODFW operations. Since 2020, the Coast Guard has flown an average 10 times each year for OSU whale survey flights out of AIRFAC Newport. *See* Defs.' Resp. to Pls.' First Set of Interrogs. at 9 (ECF 44-1). Thus, the lack of a rescue helicopter to timely respond in times of emergency will affect multiple coastal uses and resources, including fishing, recreating, and marine research. For those reasons, Defendants were required to provide a consistency determination before reassigning AIRFAC Newport's rescue helicopter. *Cf. Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006 (9th Cir. 2012) (the government's failure to consult with the appropriate wildlife agencies when the approval of mining activities "may affect" a "listed species or its critical habitat" violated the Endangered Species Act).

Because Plaintiffs have demonstrated a likelihood of success on the merits of their claim that Defendants' conduct was contrary to the CZMA, this Court should grant Plaintiffs' motion for preliminary injunction.

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

**B.    Without a Preliminary Injunction Plaintiffs Will Suffer Irreparable Harm.**

This Court should enter a preliminary injunction because Plaintiffs face a likelihood of irreparable harm absent injunctive relief for two reasons.

First, absent injunctive relief, Plaintiffs are suffering irreparable harm because their members, employees, and constituents rely on the rescue helicopter as a vital component of their safety planning and to reduce the risk of injury and death. There is no question that a response from AIRSTA North Bend is slower than a response from AIRFAC Newport, even when AIRSTA North Bend is in B-0 status and AIRFAC Newport is in B-1 status. Also, deployments from AIRSTA North Bend have less time in the air available for a search in the Newport area. Reinhold Dep. 34:9–20 (ECF 44-3). The total flight time for an MH-65E helicopter is approximately 2.5 hours. *Id.* When a helicopter must spend its first half hour traveling to Newport, that reduces its total flight time and its availability to take on additional search and rescue missions, to lengthen the search, to conduct multiple rescues, or to complete a rescue when someone cannot be located immediately.

Second, absent injunctive relief, the State has lost an important tool in marine research, as discussed in the State's motion for preliminary injunction.

Defendants assert that no injunctive relief is required to maintain the status quo because they intend to maintain the operational posture required by this Court's TRO through the winter. Resp. at 29. As an initial matter, Defendants' declaration does not supersede the October memorandum ordering reassignment of AIRFAC Newport's rescue helicopter. Nor do Defendants provide any evidence that the October memorandum was rescinded. In any case, this Court is not required to credit Defendants' assertion. *See United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 857 (9th Cir. 1995) ("The court was not in error in questioning [defendant's] credibility with respect to reforms introduced under protest or after the violation was discovered; moreover, past illegal conduct gives rise to an inference that future violations may occur."); *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 475 (S.D.N.Y. 2020), ("'A

Page 15 -  PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR
              PRELIMINARY INJUNCTION

defendant's expressed intention to cease the offending conduct is not sufficient to eliminate the possibility of irreparable harm' absent the existence 'of a consent injunction or other enforceable assurance' that the offending conduct will not recur." (quoting *Kuklachev v. Gelfman*, 629 F. Supp. 2d 236, 252 (E.D.N.Y. 2008)). As noted, the October memorandum continued the reassignment of the AIRFAC Newport rescue helicopter indefinitely to assist with immigration enforcement. Olson Suppl. Decl. Att. 4 at 5 (ECF 44-4).[10] After Plaintiffs filed their respective suits, a spokesperson for Defendants met with Senator Wyden and acknowledged that the rescue helicopter had been relocated indefinitely. McMahon Decl. ¶ 5 (6:25-cv-02172-AA, ECF 12). Without injunctive relief, there is no guarantee that Defendants will continue to abide by the terms of this Court's order. For those reasons, this Court need not credit Defendants' assertions that it will maintain current operational status for the purposes of this Court's irreparable harm analysis.

Lastly, Defendants assert Plaintiffs seek a "mandatory" injunction and therefore must establish that "extreme or very serious damage will result" absent injunctive relief. Resp. at 28 (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). Not so. Instead, Plaintiffs seek a "prohibitory injunction" that prohibits Defendants from ceasing operations or significantly reducing personnel or use of AIRFAC Newport. *See id.* at 878–89 ("A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." (citation modified)). Because Plaintiffs seek to ensure that the status quo contemplated by 14 U.S.C. § 912 remains, the ordinary standard applies.

---

[10] There is no evidence that the Coast Guard intended to restore daily Newport operations before the crabbing season opened. Even the informal email Defendants submitted suggests the deployment would end "mid-Dec" (ECF 46-7)—that email was sent on October 20, more than a month before ODFW delayed the start of the crabbing season from December 1 to December 16. *See Commercial Crab Season Delayed*, Or. Dep't of Fish & Wildlife Newsroom (Nov. 21, 2025) https://myodfw.com/news/commercial-crab-season-delayed.

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

**C.      The Balance of Equities and Public Interest Weigh in Favor of Injunctive Relief.**

The balance of equities and public interest weigh in favor of injunctive relief.

The State seeks the return of the AIRFAC Newport rescue helicopter to ensure the health and safety of ODFW and OSP personnel who rely on that helicopter when they conduct marine research and law enforcement activities on the central Oregon coast, and to further vital marine research. In contrast, Defendants face no harm from an injunction because the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015).

Defendants acknowledge that they face no harm from an injunction that requires Defendants to obey the law. Resp. at 29. And yet they argue that a preliminary injunction is inconsistent with the balance of the equities and public interest because the "potential harm in this Court ordering an injunction that obstructs the operations and operational flexibility of the Coast Guard is certainly likely to impact the safety of this Country and its citizens." *Id.* at 30. Not so.

First, Defendants remain able to "implement any reasonable management efficiencies within the air station and air facility network . . . as necessary to ensure the safety of the maritime public nationwide," when those management efficiencies do not cease operations or significantly reduce personnel or use of AIRFAC Newport. 14 U.S.C. § 912(b). What that statute forbids is ceasing or significantly reducing operations or diverting search and rescue resources for non-maritime safety purposes, including immigration enforcement at the southern border.

Second, Defendants may seek to cease operations or significantly reduce personnel and use of AIRFAC Newport, even if this Court enters a preliminary injunction. Congress has detailed how Defendants may do so in 14 U.S.C. § 912.

And third, if this Court credits Defendants assertions that they intend to maintain the current operational posture at AIRFAC Newport, there is no basis to argue that the balance of

Page 17 -  PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR
              PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

equities disfavors an injunction. In other words, if Defendants now *agree* that they should not reassign the rescue helicopter away from Newport for at least the next six months, they face no harm from a preliminary injunction requiring them to do so. *See* Reinhold Decl. ¶ 31 ("The Coast Guard currently is rotating helicopters and air crews through AIRFAC Newport to maintain a B-1 status. The Coast Guard intents to maintain that status through spring 2026 as it has since 2021."). Thus, any claim that the injunction would harm the Coast Guard is undermined by its own commitment to do the very thing that Plaintiffs ask the Court to order.

**D.      This Court Should Exercise Its Discretion to Deny Defendants' Request for a Bond.**

        If this Court requires Plaintiffs to post a bond, Plaintiffs request that this Court only require a nominal bond. Although Federal Rule of Civil Procedure 65(c) requires the movant of a preliminary injunction to post a bond "in such a sum as the court deems proper," this Court has discretion to determine that the "proper" amount of the bond is nothing or a nominal sum. *See Just Film, Inc. v. Merchant Servs., Inc.*, 474 F. App'x 493, 495 (9th Cir. 2012) ("The district court's decision not to require plaintiffs to post a bond was not an abuse of discretion."). This Court waived the bond requirement in its TRO. ECF 15. The State respectfully requests that this Court also waive the bond requirement for this motion, or, in the alternative, only require a nominal bond.

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## IV.    CONCLUSION

For the forgoing reasons, and the reasons asserted in Plaintiffs' motions (ECF 39, 42), this Court should issue a preliminary injunction.

DATED December 8, 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General

*s/ Derek Olson*
BRIAN SIMMONDS MARSHALL #196129
NINA ENGLANDER #106119
Senior Assistant Attorneys General
DEREK OLSON #225504
Assistant Attorney General
Trial Attorneys
Tel 971-673-1880
Fax 971-673-5000
Brian.S.Marshall@doj.oregon.gov
Nina.Englander@doj.oregon.gov
Derek.Olson@doj.oregon.gov
Of Attorneys for the State of Oregon

Page 19 -  PLAINTIFF STATE OF OREGON'S REPLY IN SUPPORT OF MOTION FOR
              PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000