DAN RAYFIELD
Attorney General
BRIAN SIMMONDS MARSHALL #196129
NINA ENGLANDER #106119
Senior Assistant Attorneys General
DEREK OLSON #225504
Assistant Attorney General
Trial Attorneys
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Brian.S.Marshall@doj.oregon.gov
         Nina.Englander@doj.oregon.gov
         Derek.Olson@doj.oregon.gov

Attorneys for Plaintiff, State of Oregon


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| NEWPORT FISHERMEN'S WIVES, INC., ET AL.,<br><br>              Plaintiffs,<br><br>      v.<br><br>UNITED STATES COAST GUARD, an agency of the United States Department of Homeland Security; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>              Defendants. | Case No. 6:25-cv-02165-AA (lead case)<br><br>~~CORRECTED FIRST~~SECOND AMENDED COMPLAINT |


Page 1 -  ~~CORRECTED FIRST~~SECOND AMENDED COMPLAINT
BM2/jt3

STATE OF OREGON,

                PlaintiffPlaintiffs,

    v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security; UNITED
STATES DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES COAST
GUARD, an agency of the United States
Department of Homeland Security;
ADMIRAL KEVIN LUNDAY, in his official
capacity as Acting Commander of the United
States Coast Guard~~; UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT; and TODD M. LYONS, in
his official capacity as the Senior Official
Performing the Duties of the Director of
United States Immigration and Customs
Enforcement~~,

              Defendants.

Case No. 6:25-cv-02172-AA (trailing case)

SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

1.    This is an action for declaratory and injunctive relief under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, to halt the unlawful relocation of the U.S. Coast Guard rescue helicopter that had been forward deployed to the Coast Guard Air Facility in Newport (AIRFAC Newport~~) and under the APA and the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, to halt the unlawful construction of a mass federal detention center for Defendant Immigration and Customs Enforcement (ICE) to detain up to 200 noncitizens at or near the Newport Municipal Airport.~~). In addition, the State seeks a declaration that the unlawful relocation of the forward deployed helicopter from Newport ~~and the creation of the ICE detention facility are~~is *ultra vires* and void.

2.    "Oregon borders the Pacific Ocean, which is both beautiful and treacherous." H.J.M. 20, 2015 Leg. (Oregon) (urging Congress to fund and maintain the U.S. Coast Guard Air Facility in Newport, Oregon, in perpetuity).

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

3.      Commercial and recreational activities off the central Oregon coast can be perilous: Offshore fishing "is an implicitly dangerous activity," "vessels occasionally sink or capsize," and "millions of tourists visit the Oregon coast annually," where "a number of them find themselves in distress on beaches or ocean cliffs." *Id.* And because Oregon's cold, coastal waters can endanger an overboard mariner's life in fewer than 30 minutes, *id.*, timely rescue is the difference between life and death.

4.      For all those reasons, the U.S. Coast Guard rescue helicopter that had been forward deployed to AIRFAC Newport for nearly four decades had been a literal lifeline to Oregon's central coast communities.

5.      Defendants have taken that lifeline. Without notice to the Newport community, Oregon's leaders, or Congress, Defendants ceased forward deployment of the rescue helicopter. Thus, the nearest Coast Guard rescue helicopter was located nearly 100 miles south in North Bend, a distance that can add nearly an hour travel time to any rescue off the Newport coast. That reduction in personnel and use at AIRFAC Newport comes at a serious cost. Unless the rescue helicopter is returned to Newport, "hundreds of thousands of lives could be at risk annually under [Oregon's] unique ocean conditions and current level of recreational, commercial fishing and mariner activities."[1]

6.      Defendants' actions are unlawful. Those actions constitute a closure, cessation of operations, or significant reduction in the personnel and use of AIRFAC Newport in violation of 14 U.S.C. § 912. Also, Defendants have failed to provide a consistency determination that the reassignment of the forward deployed rescue helicopter is consistent to the maximum extent practicable with federally approved enforceable policies of Oregon's coastal management program, as required by the Coastal Zone Management Act (CZMA). Defendants' actions are thus *ultra vires*, contrary to law, arbitrary, and capricious. For those reasons, this Court should

---

[1] Letter from Oregon Ocean Policy Advisory Council (OPAC) Chair Scott McMullen and Vice-Chair David Allen to Oregon Governor Kate Brown (Apr. 27, 2017) (regarding Proposed Fiscal Year 2018 President's Budget).

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

declare the rescue helicopter's reassignment unlawful and enjoin its reassignment until Defendants have satisfied the requirements of 14 U.S.C. § 912 and made the consistency determination required by the CZMA.

7.      Alongside their unlawful efforts to reassign the rescue helicopter, Defendants have been furtively working to transform the Newport Municipal Airport into an ICE detention facility. Defendants have engaged in these efforts behind closed doors, with no transparency or public process, ignoring direct requests for information from local officials and members of Congress. As a result, the State has been forced to piece together Defendants' plans for the ICE detention facility based on public reporting, inquiries to and information from federal contractors, the second-hand account of a U.S. Coast Guard witness, and related evidence.

8.      Newport Municipal Airport is adjacent to the ocean, where it is exposed to the elements, including strong wind, hail, and cold temperatures. This location is inhospitable and not equipped to house humans in temporary shelters or repurposed commercial buildings.

9.      The Oregon Department of Fish and Wildlife's Consolidated Wildlife Observation Database has documented observations of dozens of species within 500 meters of the Newport Municipal Airport, including marbled murrelets, California brown pelicans, western snowy plovers and many more. Several of the species observed near the Newport Municipal Airport are on Oregon's threatened and endangered species list, listed as threatened or endangered under the federal Endangered Species Act, identified as Species of Greatest Conservation Need in Oregon's revised State Wildlife Action Plan, or identified as Species of Greatest Information Need in Oregon's revised State Wildlife Action Plan.

10.     The Newport Municipal Airport is located within 500 meters of varied habitats that are important for conserving the fish and wildlife species that are at risk of decline. These habitats include flowing water and riparian, grassland, lakes, late successional mixed conifer, nearshore, oak habitat and wetlands.

Page 4 -   CORRECTED FIRSTSECOND AMENDED COMPLAINT
BM2/jt3

11.    The Newport Municipal Airport is located within 500 meters of Yaquina Bay, which the Environmental Protection Agency (EPA) has listed as an impaired waterbody.

12.    The Newport Municipal Airport is located within 500 meters of EPA-listed hazardous waste sites.

13.    The Newport Municipal Airport is located within 500 meters of a Priority Wildlife Connectivity Area (PWCA), which is a large contiguous area that represents the highest-value habitat for facilitating species movement throughout the state. Dozens of species identified as Sensitive Species and Species of Greatest Conservation Need have a wildlife range within 500 meters of the Newport Municipal Airport.

14.    Defendants' use of the Newport Municipal Airport for an ICE detention facility is unlawful. The hasty transformation of Newport Municipal Airport into a mass detention facility poses clear environmental impacts which, under NEPA, Defendants must consider *before* acting. But Defendants have failed to comply with NEPA's procedural requirements. Defendants have also failed to provide a consistency determination that the ICE detention facility is consistent to the maximum extent practicable with federally approved enforceable policies of Oregon's coastal management program, as required by the CZMA. Defendants' actions are thus *ultra vires*, contrary to law, and arbitrary and capricious. The State seeks an injunction and declaratory relief to halt pre-construction activities, construction, and related activities unless and until Defendants comply with NEPA and the CZMA.

## II.    JURISDICTION AND VENUE

15.7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201(a), and pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

16.8.    Venue is proper in the Eugene Division of the District of Oregon pursuant to 28 U.S.C. §§ 1391(b)(2), (e)(1), and LR 3-2(a)(3). Defendants are agencies of the United States and officers sued in their respective official capacities. The State of Oregon is a resident of this

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

district, and a substantial part of the events or omissions giving rise to this complaint occurred and continue to occur within the Eugene Division of this district.

### III.    PARTIES

**A.    Plaintiff**

17.9.    The State of Oregon is a sovereign state of the United States of America. Oregon is represented by Attorney General Dan Rayfield. The Attorney General is the chief legal officer of Oregon and is authorized to institute this action.

**B.    Defendants**

18.10.  Kristi Noem is the Secretary of Homeland Security and the head of the U.S. Department of Homeland Security. She is sued in her official capacity.

19.11.  The U.S. Department of Homeland Security (DHS) is a department of the Executive Branch of the United States government. DHS is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1).

20.    Todd Lyons is the Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement (ICE).

21.    ICE is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1). ICE is under the supervision of DHS.

22.12.  Admiral Kevin Lunday is the acting Commandant and head of the U.S. Coast Guard. He is sued in his official capacity.

23.13.  The U.S. Coast Guard is a maritime law enforcement agency. During peacetime, U.S. Coast Guard is an agency of DHS. 14 U.S.C. § 103(a), (b). U.S. Coast Guard is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1).

### IV.    BACKGROUND

**A.    A.    Reassignment of Forward Deployed AIRFAC Newport Helicopter**

    **i.    14 U.S.C. § 912 Limits Circumstances when Defendants can close, cease operations, or significantly reduce use of Coast Guard Air Facilities**

Page 6 -   CORRECTED FIRSTSECOND AMENDED COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

24.14.  The DHS Secretary may not close nor terminate operations at a Coast Guard air facility until they have satisfied the four steps contemplated by 14 U.S.C. § 912.

25.15.  First, before proposing a closure or termination of operations, the Secretary must determine that: (1) remaining search and rescue capabilities maintain the safety of the maritime public in the area of the air facility; (2) regional or local prevailing weather and marine conditions, including water temperatures or unusual tide and current conditions, do not require continued operation of the air facility; and (3) Coast Guard search and rescue standards related to search and response times are met. 14 U.S.C. § 912(a).

26.16.  Second, before closing the Coast Guard air facility, the Secretary must provide opportunities for public comment, including the convening of public meetings in the affected communities regarding the proposed closure or cessation of operations at the air facility. 14 U.S.C. § 912(a)(3). Before convening such public meetings, the Secretary must notify each congressional office representing any portion of the area of responsibility of the air station that is the subject of the public meeting of the time and location of that meeting. *Id.*

27.17.  Third, before the closure, cessation of operations, or any significant reduction in personnel and use of a Coast Guard air facility, the Secretary must submit to Congress a proposal for such closure, cessation, or reduction in operations and provide written notice of such proposal to certain Congressional representatives and legislative committees. 14 U.S.C. § 912(a)(4).

28.18.  And fourth, the Secretary may not close, cease operations, or significantly reduce personnel and use of a Coast Guard air facility until a period of 18 months beginning on the date on which the proposal for such closure, cessation, or reduction in operations has been submitted to Congress for its review. 14 U.S.C. § 912(a)(5).

ii.     **Defendants have ceased operations or significantly reduced personnel and use of AIRFAC Newport.**

29.19.  Defendant Coast Guard has "forward deployed" a rescue helicopter from Air Station (AIRSTA) North Bend to AIRFAC Newport since 1987, "following the tragic sinking of

Page 7 -  ~~CORRECTED FIRST~~SECOND AMENDED COMPLAINT
BM2/jt3

a fishing vessel that left three dead."[2] "Forward deployed" means that a helicopter and its crew stationed at AIRSTA North Bend was physically located at AIRFAC Newport and thus available to launch missions from AIRFAC Newport. Coast Guard helicopter crews have four people: a pilot, copilot, helicopter mechanic, and rescue swimmer.

30.20.  Congress approved the outpost "amid concerns that a Coast Guard base in North Bend, roughly 100 miles south, was too far away to promptly respond to emergencies in an area with a large commercial fishing fleet."[3]

31.21.  Since then, the fishermen of Newport have relied on the rescue helicopter, "to help get them safely through the season." Crucially, "Strong currents and dangerously cold water temperatures mean that rescuers have only minutes to reach people who have been thrown overboard or whose ship has capsized before hypothermia sets in."[4]

32.22.  According to reports from the Surfrider Foundation, between 2007 and 2013, 159 lives were saved by the U.S. Coast Guard in the waters off Newport. H.J.M. 20.

33.23.  Still, in 2013, the Coast Guard announced that it "would shutter the facility and operate instead out of Astoria and North Bend." Newport Fishermen's Wives, a local nonprofit, sued to prevent the facility's closure. *Newport Fishermen's Wives, Inc. v. U.S. Coast Guard*, 2015 WL 1951751 (D. Or. Apr. 29, 2015). Ultimately, Congress "stepped in and passed

---

[2] Conrad Wilson, Michelle Wiley, and Dirk VanderHart, *Newport residents, leaders denounce possible ICE detention facility*, Oregon Public Broadcasting (OPB), (Nov 13, 2025, at 3:45pm PT) https://www.opb.org/article/2025/11/12/newport-residents-leaders-denounce-possible-ice-detention-facility/

[3] Dirk VanderHart, *Newport officials raise alarm about possible new ICE facility*, Oregon Public Radio (OPB) (Nov 10, 2025, at 7:14pm PT), https://www.opb.org/article/2025/11/10/newport-officials-raise-alarm-about-possible-new-ice-facility/

[4] Anya Petrone Slepyan and Jan Pytalski, *Coastal Community Left Reeling as USCG Helicopter Gets Relocated, DHS Moves to Build ICE Detention Facility*, The Daily Yonder (Nov 18, 2025) https://dailyyonder.com/coastal-community-left-reeling-as-uscg-helicopter-gets-relocated-dhs-moves-to-build-ice-detention-facility/2025/11/18/

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

legislation that kept the Newport facility open."[5] That legislation was the predecessor statute of 14 U.S.C. § 912. Pub. L. No. 113–281, § 225(b); Pub. L. 114-120, § 208(a).

34.24.  Since then, "there have been many rescues made and lives saved because that helicopter was ready to respond when needed."[6]

35.25.  For years, Defendant Coast Guard maintained a rescue helicopter at AIRFAC Newport. In 2014, Defendant Coast Guard forward deployed a rescue helicopter to AIRFAC Newport 365 days a year, providing nearly 24-hour coverage.

36.26.  On April 24, 2021, Defendant Coast Guard began to forward deploy a rescue helicopter to AIRFAC Newport on weekends only, reducing its use of AIRFAC Newport from seven days a week to two. It appears that the Coast Guard resumed forward deploying a rescue helicopter seven days a week beginning on September 9, 2021.

37.27.  In 2022, AIRFAC Newport operated only on weekends from June through the end of September. Outside those dates, it appears that the Coast Guard forward deployed a rescue helicopter to AIRFAC Newport seven days a week during 2022.

38.28.  During 2023 and 2024, Defendant Coast Guard forward deployed a rescue helicopter to AIRFAC Newport on weekends and holidays from May through September. Outside those dates, it appears that the Coast Guard forward deployed a rescue helicopter to AIRFAC Newport seven days a week in 2023-24.

39.29.  In 2025, Defendant Coast Guard initially forward deployed a rescue helicopter to AIRFAC Newport seven days a week.

40.30.  But on May 5, Defendant Coast Guard received authorization to suspend forward deployment of a rescue helicopter from North Bend to Newport until September 30, 2025. North

---

[5] Wilson, *supra* note 1.

[6] Del Norte Triplicate, *Coast Guard Air Facility in Newport still saving lives* (Aug 4, 2025) https://www.triplicate.com/salute_to_the_united_states_coast_guard/coast-guard-air-facility-in-newport-still-saving-lives/article_f32725ec-ed19-5a02-9302-20d77f61b354.html

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

Bend is roughly 100 miles south of Newport, a distance that adds "30 to 60 minutes of response delay."[7]

41.31.  An October 29 Coast Guard memorandum requested an extension of that authorization, which was granted, extending the suspension of rescue helicopter operations from AIRFAC Newport indefinitely. Thus, starting on May 5, 2025, and continuing until this Court entered its temporary restraining order on November 24, 2025, the Coast Guard reduced the number of days that it forward deployed a rescue helicopter to AIRFAC Newport from seven days a week to zero. That reduction in forward deployment also reduced the number of regularly scheduled personnel at AIRFAC Newport from five to one.

42.32.  Ceasing forward deployment of a rescue helicopter constitutes closure, cessation of operations, or a significant reduction in the personnel and use of AIRFAC Newport.

43.33.  Before ceasing forward deployment of the rescue helicopter, Secretary Noem did not provide opportunities for public comment, nor convene public meetings in Newport regarding a proposed closure or cessation of operations at AIRFAC Newport.

44.34.  Before ceasing forward deployment of the rescue helicopter, Secretary Noem did not notify Congresswoman Val Hoyle, who represents Newport in the U.S. House of Representatives, nor Ron Wyden nor Jeff Merkley, Oregon's U.S. Senators, regarding any opportunity for a public meeting to discuss closure or cessation of operations at AIRFAC Newport.

45.35.  Before ceasing forward deployment of the rescue helicopter, Secretary Noem did not submit a proposal for closure, cessation, or reduction in operations of AIRFAC Newport to any congressional committee or member of congress.

46.36.  Before ceasing forward deployment of the rescue helicopter, Secretary Noem did not provide any written notice to any Oregon congressional representative of the helicopter's impending removal.

---

[7] Decl. of Dr. Leann Cyr, PhD ("Cyr Decl.") ¶ 7 (Case No. 6:25-cv-02165, ECF 10).

Page 10 -  CORRECTED FIRSTSECOND AMENDED COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

iii.    **Defendants' relocation of the rescue helicopter violates the Coastal Zone
Management Act (CZMA)**

47.37.  Ending forward deployment of the rescue helicopter to AIRFAC Newport will
have a reasonably foreseeable effect on coastal uses, including navigation, fishing, and
recreation, resulting from the loss of this local search and rescue resource.

48.38.  The Coast Zone Management Act (CZMA) of 1972 provides that federal agency
actions that affect any use or resource of the state's coastal zone, must be consistent to the
maximum extent practicable with the federally approved enforceable policies of a state's coastal
management program. 16 U.S.C. § 1456(c).

49.39.  A "federal agency activity" is "any function performed by or on behalf of a
Federal agency in the exercise of its statutory responsibilities." 15 C.F.R. § 930.31.

50.40.  The U.S. Secretary of Commerce approved the Oregon Coastal Management
Program on July 7, 1977. Or. Rev. Stat. § 196.425(1).

51.41.  A federal agency carrying out an activity in a coastal zone is required to provide
the state a consistency determination no later than 90 days before the final approval of the
activity, unless "the Federal agency and the State agency agree to a different schedule." 16
U.S.C. § 1456(c)(1)(C); 15 C.F.R. § 930.36(b). That determination includes whether an action
has reasonably foreseeable direct and indirect effects on any coastal use or resource. 15 C.F.R.
§ 930.33. An "effect on any coastal use or resource" means "any reasonably foreseeable effect
on any coastal use" resulting from a federal action and include direct and indirect effects which
result from the activity and later in time. 15 C.F.R. § 930.11(g). Coastal uses include recreation
and fishing. 15 C.F.R. § 930.11(b).

52.42.  Federal agencies are required to consider the enforceable policies of a
management program "as requirements to be adhered to in addition to existing Federal agency
statutory mandates." 15 C.F.R. § 930.32(2).

53.43.  Oregon's Statewide Planning Goal 19, "Ocean Resources" is an enforceable
policy of the Oregon Coastal Management Program. Goal 19 provides in part that "State and

Page 11 -  ~~CORRECTED FIRST~~SECOND AMENDED COMPLAINT
BM2/jt3

federal agencies shall carry out actions that are reasonably likely to affect ocean resources and uses of the Oregon territorial sea in such a manner as to…protect and encourage the beneficial uses of ocean resources – such as navigation, food production, [and] recreation." Goal 19, Implementation Requirement 1.

54.44.  Coastal states are required to establish public notice procedures to relay the federal agency's determination that its planned action is consistent with the state's enforceable policies. 15 C.F.R. § 930.42.

55.45.  The affected State may concur or object to the federal agency's consistency determination. 15 C.F.R. § 930.35(c).

**B.     Defendants' reassignment of the rescue helicopter has harmed the State.**

56.46.  The Oregon Department of Fish and Wildlife (ODFW) Marine Resources Program is located at the Oregon State University (OSU) Hatfield Marine Science Center in Newport.

57.47.  ODFW staff from the Marine Resources Program routinely conduct field research at sea, in the estuary and along Newport's open rocky coast. This field research is essential to advancing the work and mission of ODFW's Marine Resources Program to sustain ocean and estuary resources, build understanding about fish and wildlife and their habitats, and benefit Oregon's species, ecosystems, and people.

58.48.  In the course of their field research, ODFW researchers are frequently aboard small vessels in the estuary and large vessels—commercial fishing boats or vessels chartered by ODFW—in the ocean. ODFW research teams are aboard vessels for single-day trips or prolonged trips up to seven days, commonly with 200 cumulative annual trips on ocean or estuary waters.

59.49.  ODFW employees also conduct research along Newport's rocky coastline and cliffs and ride along on recreational vessels at sea.

Page 12 -  ~~CORRECTED FIRST~~SECOND AMENDED COMPLAINT

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

60.50.  The primary responsibility of the Oregon State Police's (OSP) Fish and Wildlife Division is to protect natural resources by enforcing fish, wildlife and commercial fishing laws. The Fish and Wildlife Division has a Marine Fisheries Team, comprised of seven trooper positions and one sergeant stationed along the coast of Oregon.

61.51.  OSP's largest vessel, the Guardian, is harbored in Newport. It is the OSP's only long-range ocean-going patrol vessel properly equipped to pull and inspect commercial fishing gear. The Guardian is used to ensure compliance with and enforce commercial and sport fishing regulations in the Pacific Ocean and coastal inland waters. The Marine Fisheries team and other troopers also use smaller vessels to patrol and to contact other watercraft in the Pacific Ocean.

62.52.  The rescue helicopter at AIRFAC Newport is an integral part of the State's safety planning and protocols for its employees. ODFW and OSP rely on the helicopter to be available for their employees that work at sea, in the estuary, and along the coast.

63.53.  Every minute matters when there is an emergency in the ocean or along the coast. The State is harmed by the delayed response time caused by reassigning the forward deployed rescue helicopter away from AIRFAC Newport.

64.54.  The helicopter in Newport also advances ODFW's research. ODFW partners with researchers at Oregon State University (OSU) to conduct research on whale population distribution and its overlap with fisheries that can lead to whale entanglement. ODFW and OSU researchers fly on the Newport helicopter to collect data for this research. The reassignment of the helicopter away from AIRFAC Newport makes this research more difficult to conduct.

65.55.  The State is also harmed by DHS's procedural irregularity in the reassignment. If the State had an opportunity to provide public comment on a proposed reassignment of the helicopter under 14 U.S.C. § 912, it would have done so.

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

C.    ICE Detention Facility in Newport

    i.    Defendants are planning an ICE detention facility in Newport.

66.    Defendants have decided to authorize, fund, and maintain an ICE detention facility in Newport. That decision constitutes final agency action, which DHS and ICE are actively implementing.

67.    Upon information and belief, the ICE detention facility will be located in or around the Newport Municipal Airport, including the 4-acre parcel that currently houses the AIRFAC Newport helicopter and may include use of a 10-acre parcel at the Newport Municipal Airport that is currently leased by Signal Ventures.

68.    Defendants' decision-making and planning for the ICE detention facility is occurring behind closed doors, with no transparency or public process. Even Defendants' solicitation for contractors—which government agencies typically post publicly—have been issued directly to pre-vetted vendors with no public visibility. As a result, the State has been forced to piece together Defendants' plan for the ICE detention facility based on the following facts.

69.    During a deposition, U.S. Coast Guard Captain Kent Reinhold acknowledged internal discussions regarding preparing AIRFAC Newport to be used as an ICE facility that occurred in early November 2025.

70.    Team Housing Solutions, Inc.—a contractor that specializes in quickly standing up housing for troops and private-sector workers—sent a notice of intent to lease the 4.3 acres of land located at the Newport Municipal Airport for "federal operations" set to begin in December 2025 for a period of at least six months. The request outlines several different uses for the potential facility, including parking for unspecified equipment and vehicles and space for mobile office trailers, storage containers and generators. It proposes the creation of a 12-foot security fence around the leased area "for controlled access." Upon information and belief, this request was withdrawn after public outcry.

Page 14 -  CORRECTED FIRSTSECOND AMENDED COMPLAINT

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

71.    Team Housing Solutions, Inc. has reached out to multiple hotels in Newport and along the Oregon coast to inquire about reserving as many as 200 hotel rooms for up to a year.

72.    ICE has hired a Project Manager/Environmental Scientist as a contractor to begin the process of initiating a CZMA consultation and developing a federal consistency determination for the ICE detention facility in Newport, Oregon.

73.    ICE has issued one or more solicitations for contractors to perform work related to the construction and utilization of the ICE detention facility. At least one of the solicitations seeks contractors to perform health services at the ICE detention facility as early as January 2026.

74.    A contractor that specializes in rapidly deployable expeditionary healthcare services in remote and austere environments—including healthcare support for military exercises and operations, diplomatic missions, natural disasters, and refugee care—has posted twelve full-time job openings in Newport, Oregon. The open positions are listed as "hazardous duty" and include openings for a clinical director, registered nurse, pharmacist, physician, and a behavioral health specialist.

75.    A contractor reached out to the City of Newport's Wastewater Supervisor regarding sewer disposal needed for a temporary full-service hotel in Newport after January 1, 2026. The contractor indicated that the disposal methodology will be via vacuum truck, the daily volume of black water will be between 80 and 130 gallons, and the daily volume of grey water will be between 9,600 and 15,600 gallons. The City of Newport is unable to accommodate or process this level of waste due to limitations in infrastructure.

76.    A contractor reached out to the City of Eugene because the contractor received a request to perform a job hauling residential wastewater from a site in Newport. The contractor estimated that the volume of hauled wastewater will initially total approximately 15,000 gallons per day, increasing to approximately 30,000 gallons per day.

Page 15 -  CORRECTED FIRSTSECOND AMENDED COMPLAINT
BM2/jt3

77.    Upon information and belief, ICE notified potential contractors that noncitizens arrested in Portland, and in a 350-mile radius from Newport, could wind up at the ICE detention facility.

78.    Upon information and belief, ICE informed potential contractors that it plans to hold most detainees at the ICE detention facility in Newport for fewer than 72 hours to avoid triggering heightened standards of care—which require more space and services—under the federal rules. But ICE has also acknowledged stays may exceed the 72-hour threshold, even though doing so would violate its own standards.

ii.    **NEPA requires federal agencies to identify and evaluate significant environmental impacts of major federal actions and to issue an Environmental Impact Statement (EIS) or Environmental Assessment (EA)** *before* **taking final agency action.**

79.    The National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, requires federal agencies to identify and evaluate significant environmental impacts of major federal actions, as well as feasible alternatives, before taking final agency action. NEPA thus ensures that federal agencies and the public are aware of the environmental consequences of government projects and alternatives before the federal agency takes final action. Properly applied, NEPA helps agencies make better decisions and ensure good project management.

80.    NEPA requires federal agencies to prepare an Environmental Impact Statement (EIS) for any major federal action significantly affecting the quality of the human environment, or an Environmental Assessment (EA) if the agency action does not have reasonably foreseeable significant effects on the human environment, or if the significance of such effect is unknown.

81.    The EIS or EA must be prepared before the federal agency takes final agency action.

82.    Major federal actions include any action that is subject to "substantial Federal control and responsibility." 42 U.S.C. § 4336e(10)(A).

83.    The creation of an immigration detention center is an action that is necessarily subject to federal control and responsibility. The State of Oregon has neither authority nor

Page 16 -  CORRECTED FIRSTSECOND AMENDED COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

jurisdiction to enforce federal immigration law. *See Arizona v. United States*, 567 U.S. 387 (2012) (holding that federal law preempts state immigration law enforcement). Indeed, Oregon statute forbids state and local governments from assisting the federal government with immigration enforcement. *See* Or. Rev. Stat. §§ 180.805, 181A.820 -.829.

84.     Before drafting an EIS, NEPA requires the head of the lead agency to "consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved." 42 U.S.C. § 4332(C).

85.     An EIS must include a "detailed statement" addressing the following: (1) reasonably foreseeable environmental effects of the proposed agency action; (2) any reasonably foreseeable adverse environmental effects which cannot be avoided should the proposal be implemented; (3) a reasonable range of alternatives to the proposed agency action, including an analysis of any negative environmental impacts of not implementing the proposed agency action in the case of a no action alternative, that are technically and economically feasible, and meet the purpose and need of the proposal; (4) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and (5) any irreversible and irretrievable commitments of federal resources which would be involved in the proposed agency action should it be implemented. 42 U.S.C. § 4332(C)(i)-(v).

86.     An EA must include a discussion of (1) the need for the proposed action, (2) alternatives to the action, (3) the affected environment, (4) the environmental impacts of proposed action and alternatives, (5) other applicable environmental laws and executive orders, (6) a listing or summary of any coordinate or consultation undertaken with any federal agency, state or local government, federally-recognized Indian tribe regarding compliance with all applicable laws and executive orders, (7) identification and description of any mitigation measures considered, and (8) incorporation of documents by reference, if appropriate. 40 C.F.R. § 6.205(e).

Page 17 -  CORRECTED FIRSTSECOND AMENDED COMPLAINT
BM2/jt3

iii.     Defendants' creation of an ICE detention facility in Newport violates NEPA.

87.     Defendants' decision to construct, maintain and fund an ICE detention center in Newport poses clear environmental impacts. A mass detention facility for 200 people could include the installation of housing units or tents, construction or utilization of sanitation and food services systems, industrial high-intensity lighting infrastructure, diesel power generators, substantial fill material altering the natural terrain, and provision of transportation logistics, all of which could significantly affect the quality of the human environment in and around Newport.

88.     Newport is at high risk to the impacts of a tsunami, especially a local tsunami generated by an earthquake along the Cascadia subduction zone. No feasible plan has been studied to evacuate detainees and personnel in the event of a tsunami or major flooding event.

89.     To the State's knowledge, no categorical exclusion from NEPA has been invoked by the Defendants, nor does any apply.

90.     To the State's knowledge, no exemption nor waiver of NEPA requirements has been invoked by Defendants, and none exist.

91.     There is no emergency that would warrant departure from NEPA's requirements, as NEPA contains no exception for emergencies.

92.     No public notice or hearing has been conducted in connection with the creation of an ICE detention facility in Newport.

93.     Defendants' decision to construct, maintain and fund an ICE detention facility in Newport is a major federal action, as it involves the use of federal authority, approvals, funding and resources, and will have significant environmental impacts on an ecologically sensitive area. Those impacts, which to date have gone unevaluated, could logically include impacts to listed species, impacts to wetlands and surface waters, impacts due to increased activities at Newport Municipal Airport, including traffic, tsunami and flooding preparedness, etc.

94.     To the State's knowledge, no EA nor EIS has been prepared by Defendants or any cooperating agency.

Page 18 -  CORRECTED FIRSTSECOND AMENDED COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

**95.** The failure to conduct the required environmental review under NEPA violates federal law and deprives the public and affected stakeholders, including the State, of required procedures and procedural environmental protections.

**iv.     Defendants' construction of an ICE detention facility in Newport violates CZMA**

96. The State realleges each paragraph as set out above.

97. Defendants' transformation of the Newport Municipal Airport into an ICE detention facility is a final agency action that will have a reasonably foreseeable effect on coastal uses. Those reasonably foreseeable effects include those on fishing and recreation, resulting from the environmental impacts of housing up to 200 detainees and the accompanying human impacts such as significantly increased wastewater, transportation, and traffic.

98. Although Defendants appear to have begun the process of completing a consistency determination regarding the ICE detention facility, upon information and belief, that consistency determination has not yet been completed.

99. Defendants have not provided the State with any consistency determination regarding the use of Newport Municipal Airport (with or without the surrounding areas) as an ICE detention facility. Thus, the 90-day waiting period contemplated by the CZMA before development may begin has not started.

100. The State has not agreed to receive a consistency determination regarding the ICE detention facility in fewer than 90 days before final approval of the ICE detention facility.

101. The State has not yet provided the public notice required by 15 C.F.R. § 930.42 of an ICE detention facility in Newport, because Defendants have not yet provided a consistency determination regarding that ICE detention facility.

102. The State would require no fewer than 90 days to review a consistency determination regarding the ICE detention facility and determine whether to concur or object to that consistency determination.

Page 19 - CORRECTED FIRSTSECOND AMENDED COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

103.    Upon information and belief, Defendants intend to begin housing migrant detainees at the Newport Municipal Airport beginning in early 2026.

104.    Because Defendants cannot satisfy the CZMA's requirement to provide 90 days' notice of their consistency determination and begin housing migrant detainees at the Newport Municipal Airport in early 2026, Defendants intend to violate the CZMA.

**v.    The State is harmed by the construction of the ICE detention facility.**

105.    Oregon has a unique sovereign interest in the protection of the state's natural resources, including the dozens of fish and wildlife species that have been observed at or near the Newport Municipal Airport.

106.    Oregon has a unique sovereign interest in protecting the natural environment and the diverse fish and wildlife habitat located at or near the Newport Municipal Airport.

107.    Oregon's sovereign interest includes managing and protecting coastal resources and ecosystems and the quality of life in coastal communities for the benefit of current and future generations.

108.    Defendants' failure to ensure that its actions at Newport Municipal Airport comply with NEPA and are consistent with Oregon's enforceable policies harms both Oregon's coastal resources and Oregon's interest in protecting those resources.

109.    The State is injured by Defendants' unlawful actions, which threaten the integrity of Newport's sensitive natural areas and health and human safety.

The State is also injured by being deprived of critical information and a public process to analyze and address significant environmental impacts associated with the ICE detention facility. NEPA is a procedural statute and "a litigant vested with a procedural right, 'has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision' alleged to have harmed the litigant." *Nat. Res. Def. Council v. E.P.A.*, 542 F.3d 1235, 1246 n.6 (9th Cir. 2008) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 518 (2007)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992) ("The person who has been

Page 20 - CORRECTED FIRSTSECOND AMENDED COMPLAINT
BM2/jt3

accorded a procedural right to protect [their] concrete interests can assert that right without

meeting all the normal standards for redressability and immediacy.").

## CAUSES OF ACTION

### COUNT 1
### Violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), (C)–(D) —
### Action that is Contrary to Law (14 U.S.C. § 912)

110.56.        The State realleges and incorporates by reference the allegations set forth

in each of the preceding paragraphs of this Complaint.

111.57.        Under the Administrative Procedure Act (APA), a Court must "hold

unlawful and set aside agency action" that is "not in accordance with the law," "or "in excess of

statutory jurisdiction, authority, or limitations, or short of statutory right," or "without

observance of procedure required by law…." 5 U.S.C. § 706(2)(A), (C)–(D).

112.58.        Defendants' decision to reassign the forward deployed helicopter from

AIRFAC Newport constitutes final agency action because it represents the "consummation" of

the agency's decision-making process and represents action "from which legal consequences will

flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation and quotation marks omitted).

113.59.        For the reasons discussed above, Defendants' action is not in accordance

with the law and is without observance of the procedures required by law. Defendants'

reassignment of the rescue helicopter from AIRFAC Newport represents closure, cessation of

operations, or significant reduction in the personnel and use of AIRFAC Newport without

satisfying the requirements of 14 U.S.C. § 912.

### COUNT 2
### Violation of the Administrative Procedure Act (APA) —
### Action that is Arbitrary and Capricious, 5 U.S.C. § 706(2)(A)

114.60.        The State realleges and incorporates by reference the allegations set forth

in each of the preceding paragraphs of this Complaint.

115.61.        In addition to being contrary to law, Defendants' closure, cessation of

operations, or significant reduction in the personnel and use of AIRFAC Newport is arbitrary and

Page 21 -  CORRECTED FIRSTSECOND AMENDED COMPLAINT
BM2/jt3

capricious because Defendants have not offered "a satisfactory explanation for [their] action, including a rational connection between the facts found and the choice made." *Ohio v. E.P.A.*, 603 U.S. 279, 292 (2024) (internal quotation marks and brackets omitted).

## COUNT 3
### *Ultra Vires* Action —— Violation of 14 U.S.C. § 912

116.62.    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

117.63.    14 U.S.C. § 912 prohibits Defendants from closing, ceasing operations, or significantly reducing personnel and use of AIRFAC Newport without satisfying the procedural steps discussed above.

118.64.    By failing to satisfy those procedural requirements before reassigning the forward deployed AIRFAC Newport rescue helicopter, Defendants have closed, ceased operations, or significantly reduced the personnel and use of AIRFAC Newport, and are therefore acting *ultra vires*.

119.65.    For those reasons, the State is entitled to a declaration that reassignment of the forward deployed rescue helicopter is invalid and an injunction requiring Defendants to return the rescue helicopter to AIRFAC Newport. Absent such relief, the State will continue to be harmed by Defendants' unlawful actions.

## COUNT 4
### Violation of the Administrative Procedure Act (APA) —
### Action that is Contrary to Law: CZMA Review (16 U.S.C. § 1456(c))

120.66.    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

121.67.    Defendants have failed to provide a consistency determination that reassignment of the AIRFAC Newport rescue helicopter is consistent to the maximum extent practicable with federally approved enforceable policies of Oregon's coastal management program.

Page 22 -  CORRECTED FIRSTSECOND AMENDED COMPLAINT
BM2/jt3

122.68.        And, in any case, Defendants' relocation of the rescue helicopter is not consistent to the maximum extent practicable with the federally approved enforceable policies of the State's coastal management program. 16 U.S.C. § 1456(c).

123.69.        Accordingly, Defendants' actions are contrary to law, in violation of the APA.

### COUNT 5
*Ultra Vires* Action —
**Violation of the ~~Administrative Procedure Act (APA)~~ —
~~Action that is Contrary to Law:~~ CZMA Review (16 U.S.C. § 1456(c))**

124.    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

125.    Defendants' decision to authorize construction of an ICE detention facility or authorize dispersal of funds to construct and maintain an ICE detention facility constitutes final agency action, which is reviewable under the APA.

126.    Defendants have failed to provide a consistency determination that utilizing the Newport Municipal Airport as an ICE detention facility is consistent to the maximum extent practicable with federally approved enforceable policies of Oregon's coastal management program.

127.    And, in any case, Defendants' planned utilization of the Newport Municipal Airport as an ICE detention facility is not consistent to the maximum extent practicable with the federally approved enforceable policies of the State's coastal management program.

128.    Accordingly, Defendants' actions are contrary to law, in violation of the APA.

### COUNT 6
**Violation of the Administrative Procedure Act (APA) —
Action that is Contrary to Law (NEPA (42 U.S.C. § 4321, *et seq*.))**

129.    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

Page 23 -  ~~CORRECTED FIRST~~SECOND AMENDED COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

130.    Defendants' decision to authorize construction of an ICE detention facility or authorize dispersal of funds to construct and maintain an ICE detention facility constitutes final agency action, which is reviewable under the APA.

131.    To the State's knowledge, Defendants have not consulted with any federal agency that has jurisdiction by law or special expertise with respect to any environmental impact involved with construction of the ICE detention facility at Newport Municipal Airport.

132.    To the State's knowledge, Defendants have prepared neither an EIS nor an EA with respect to the construction of the detention facility at Newport Municipal Airport.

133.    Defendants have approved or are implementing the use of Newport Municipal Airport for an ICE detention facility without providing the State and the public with an opportunity for notice and comment, and without adhering to required environmental review procedures under NEPA and other federal laws. Accordingly, Defendants have authorized the use of the Newport Municipal Airport as an ICE detention facility before completing the analyses required by NEPA.

134.    The decision to proceed without notice, comment and without an EA or EIS constitutes final agency action and is subject to judicial review.

135.    Failure to conduct the required environmental review under NEPA deprives the public and affected stakeholders, including the State, of required procedures and procedural environmental protections. As a result, Defendants' actions are not in accordance with law under the APA.

136.    The State is entitled to injunctive and declaratory relief requiring compliance with NEPA before any further activity occurs with respect to the creation of an ICE detention facility in Newport.

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

~~COUNT 7~~
~~Violation of the Administrative Procedures Act (APA) —~~
~~Agency Action is Arbitrary and Capricious~~

~~137.    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.~~

~~138.    In addition to being contrary to law, Defendants' creation of an ICE detention facility in Newport is arbitrary and capricious because Defendants have not offered "a satisfactory explanation for [their] action, including a rational connection between the facts found and the choice made." *Ohio*, 603 U.S. at 292 (internal quotation marks and brackets omitted). Indeed, Defendants have offered *no* explanation.~~

~~COUNT 8~~
~~*Ultra Vires* **Action —**~~
~~Violations of the CZMA and NEPA~~

~~139.~~70.        The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

~~140.~~71.        The CZMA requires Defendants to provide a consistency determination before taking federal agency action that affects any use or resource of the State's coastal zone.

~~141.~~72.        By failing to provide a consistency determination before ceasing forward deployment of the rescue helicopter ~~or utilizing the Newport Municipal Airport as an ICE detention facility~~, Defendants have violated the CZMA.

~~142.    NEPA requires Defendants to create an EIS or an EA before creating, funding or maintaining an ICE detention facility in Newport. Because Defendants failed to do so, Defendants have violated NEPA.~~

~~143.~~73.        For ~~those reasons~~that reason, the State is entitled to a declaration that cessation of the forward deployment of the rescue helicopter ~~and development of the ICE detention facility are~~is invalid and injunctive relief requiring Defendants to return the rescue helicopter ~~and to cease developing the ICE detention facility~~. Absent such relief, the State will continue to be harmed by Defendants' unlawful actions.

Page 25 -  ~~CORRECTED FIRST~~SECOND AMENDED COMPLAINT
BM2/jt3

**PRAYER FOR RELIEF**

WHEREFORE, the State prays that the Court:

a.      Declare that any order closing the Newport Coast Guard air facility, ceasing its operations, or significantly reducing its personnel and use is *ultra vires*.

b.      Declare that any order closing the Newport Coast Guard air facility, ceasing its operations, or significantly reducing its personnel and use is contrary to law.

c.      Declare that any order closing the Newport Coast Guard air facility, ceasing its operations, or significantly reducing its personnel and use is arbitrary and capricious.

d.      Declare that Defendants' failure to provide a consistency determination before suspending forward deployment of the rescue helicopter to AIRFAC Newport is contrary to law.

e.      Hold unlawful and enjoin Defendants' reassignment of the forward deployed rescue helicopter from AIRFAC Newport.

f.      To temporarily restrain, preliminarily enjoin, and stay Defendants' reassignment of the rescue helicopter from AIRFAC Newport, thereby requiring its return to AIRFAC Newport under the same operational status as prior to the reassignment, for the pendency of this litigation.

g.      To set aside and vacate Defendants' order suspending forward deployment of a rescue helicopter to AIRFAC Newport.

~~h.      Declare that Defendants' decision to construct, maintain and fund an ICE detention facility in or around the Newport Municipal Airport is *ultra* vires.~~

~~i.      Declare that Defendants' decision to construct, maintain and fund an ICE detention facility in or around the Newport Municipal Airport is contrary to law and violates NEPA, the CZMA, and the APA.~~

~~j.      Declare that Defendants' decision to construct, maintain and fund an ICE detention facility in or around the Newport Municipal Airport is arbitrary and capricious.~~

Page 26 -  ~~CORRECTED FIRST~~SECOND AMENDED COMPLAINT

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

~~k.      Hold unlawful and enjoin Defendants' decision to construct, maintain and fund an ICE detention facility in or around the Newport Municipal Airport.~~

~~l.      To temporarily restrain, preliminarily enjoin, and stay Defendants from constructing or maintaining an ICE detention facility in Newport, including any pre-construction activities, construction, conversion, or use of the Newport Municipal Airport for purposes of migrant detention unless and until Defendants comply with the CZMA, NEPA, and the APA.~~

~~m.      To set aside and vacate Defendants' authorization to construct an ICE detention facility or disperse funds to construct and maintain an ICE detention facility in Newport.~~

DATED ~~December 19,~~ February 5, 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General

_s/ ~~Nina Englander~~ Brian Simmonds Marshall_____

BRIAN SIMMONDS MARSHALL #196129
NINA ENGLANDER #106119
Senior Assistants Attorney General
DEREK OLSON #225504
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.oregon.gov
Nina.Englander@doj.oregon.gov
Derek.Olson@doj.oregon.gov
Of Attorneys for the State of Oregon

Page 27 -  ~~CORRECTED FIRST~~SECOND AMENDED COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000